STATE *vs.* STANLEY M. KIEON *et al.*

NOVEMBER 9, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. This is an indictment charging the defendants with robbery. These same defendants in a prior trial to a jury in the superior court were convicted of the offense charged in the indictment. They subsequently prosecuted a bill of exceptions to this court, and as a result thereof the convictions were reversed and a new trial was ordered. *State* v. *Kieon*, 89 R. I. 320, 152 A.2d 531. The case has been tried again to a jury in the superior court, the defendants convicted, and their subsequent motion for a new trial denied. The case is now in this court on a single bill of exceptions prosecuted by both defendants which relates primarily to certain evidentiary rulings and comments of the trial justice.

It appears from the record that on the evening of April 19, 1957 Thomas Bannister, the manager of a market located on Reservoir avenue in the city of Cranston, had gone to a restaurant on Park avenue in that city to deliver some merchandise. According to Bannister's testimony, after he had parked his car and alighted therefrom, he was approached by two men holding their hands in their coat pockets whom he identified as defendants Kieon and Sito. He further testified that "they walked up and they flanked me, one on the right side and one on my left side"; that upon demand he gave his keys to them; that he was then directed to re-enter his car and lie on the floor of the rear seat; and that defendant Kieon then drove the car back to the market on Reservoir avenue, which he entered after taking Bannister's keys and obtaining from him the combination of a safe. At this time they told Bannister they would "rough" him up if he gave them a "bum steer."

Bannister further testified that within a short time defendant Kieon emerged from the market and stated he had been unable to open the safe; that they thereupon directed him to go into the store with them where he opened two safes from which defendants removed certain moneys; that they then left the store; and that they had crossed to the rear of the parking lot behind the store when they heard the sound of a siren. They ran into an adjoining field, one of the men holding Bannister by the arm, and the other, while running, shouted "Cold cock him." They stopped in some bushes in the field, bound and gagged Bannister, and left him there. Within a short time he freed himself and went to a nearby house where he called the Cranston police.

It further appears that about this same time a Cranston police officer was making a routine check on the parking lots behind a nearby automobile salesroom and the market. While so engaged, he came upon a man crouching beside an automobile later identified as Bannister's car. This man, identified as defendant Kieon, being unable to satisfactorily

explain to the patrolman his reason for being there, was taken into custody. The defendant Sito was arrested later that night in Pawtucket.

One exception of defendants was taken to a ruling of the court under which a gun that had been found close to the place where defendant Kieon had been taken into custody was admitted into evidence. We perceive no error in the admission of the gun into evidence as an exhibit. Generally, where articles of this type are offered in testimony a showing of a probability that the proffered evidence was connected with the crime is sufficient to warrant its admission in evidence, the weight to be given thereto being a matter for evaluation by the trier of facts. *Davis* v. *State,* 225 Md. 45; *State* v. *Litman,* 106 Conn. 345; *Commonwealth* v. *O'Toole,* 326 Mass. 35. This court in *State* v. *Greene,* 74 R. I. 437, at page 444, referring to a gun that had been purchased by the defendant and purportedly used in a slaying, held it to be a "relevant and competent exhibit."

In the instant case the gun introduced into evidence had been found when two members of the Cranston police department, one of them being the arresting officer, had returned to the place at which defendant Kieon was taken into custody. They found the gun at a spot eight feet away from the place where the arresting officer had first observed Kieon crouching beside a car. It is our opinion that in these circumstances the probable connection of the gun with the commission of the crime is sufficiently established to permit its being admitted into evidence. Whether the gun would have been properly admitted if the crime charged in the instant indictment were armed robbery is a question upon which we are not required to pass.

The defendants are also pressing three exceptions taken to rulings of the court concerning the admission of testimony related to the finding of the gun. The defendants contend, as we understand them, that this evidence was

without relevancy to the issue at trial and that it was adduced for the purpose of inflaming and prejudicing the jury against them. It is true that the introduction into a criminal case of irrelevant evidence may so inflame and prejudice the jury as to constitute reversible error. This court has held that a defendant is entitled to the presumption of innocence and that such presumption is not to be adversely affected by the introduction into the trial of evidence without probative force on the issue at trial. *State v. Christofaro,* 70 R. I. 57.

In every criminal case the primary issue is the guilt or innocence of the defendant. However, either to prove or disprove this issue obviously depends upon the establishment of subsidiary facts. Evidence adduced for the purpose of proving such facts is relevant "when it is so related that, according to the common course of events, it either alone or in connection with other evidence renders the existence of the fact more certain or probable." 1 Underhill, Criminal Evidence (5th ed.), §11, p. 12.

In the instant case the state would not be required to prove that either defendant was armed in the perpetration of the robbery to establish the offense charged in the indictment. Nevertheless, it does not follow therefrom that the state is precluded from establishing that one or both of them were armed in order to establish facts that are probative of the commission of the offense or to disprove facts sought to be established by defendants to prove the contrary.

Here the store manager Bannister testified that as defendants approached him in the parking lot their hands were in their pockets. He also testified that they threatened to "rough" him up and to "Cold cock him." There is also in evidence Kieon's testimony offered to explain his presence in the area behind the store at the time he was apprehended. His testimony was that he was there with a woman who fled when a patrolman approached. With this evi-

dence in the record it is our opinion that testimony relating to the finding of the gun was relevant and that it tended to prove that defendants or one of them was armed, which in turn is probative of their commission of the offense charged as well as relevant to disprove Kieon's explanation for being in the parking lot at the time he was apprehended. These exceptions of defendants are overruled.

The defendants also press an exception to the admission into evidence of a photograph of defendant Kieon which, according to the testimony, was a true and authentic representation of him. The photograph was taken upon the direction of a Cranston police officer about nine o'clock on the morning of April 20, which was the day following the time at which defendant testified he had been beaten by the Cranston police. The obvious purpose in the introduction of this photograph was to contradict Kieon's testimony that he had been beaten.

It is a well-settled rule in this state that the determination of the relevancy and materiality of photographs is ordinarily a matter within the sound discretion of the trial justice. *State* v. *Greene, supra,* at page 443. It is further settled that where a photograph constitutes competent evidence and reasonably tends to prove or disprove some material fact in issue, it is admissible in evidence even though it may have an influence beyond the strict limits of the purpose for which it was admitted. *State* v. *Miller,* 52 R. I. 440. For this reason it is our opinion, assuming that this photograph of defendant Kieon did have some adverse effect upon the jury, its admission in the circumstances was not error. This exception is overruled.

The fourth exception of defendants was taken to the refusal of the trial justice to strike from the record the testimony of a police officer that at the Cranston police station on the night of his arrest defendant Kieon was identified by Bannister as one of the two men who had committed the robbery. The defendants' attack upon this testimony, as we

understand it, is predicated upon its character as hearsay evidence. A long-standing rule that has had a wide judicial acceptance recognized the hearsay character of extrajudicial identifications and for that reason usually held testimony concerning them to be inadmissible. Typical of the decisions in which this view is taken is that of the New York court of appeals wherein the testimony of a police officer that the victim of a robbery had identified the accused at the time of his arrest was inadmissible as hearsay. *People* v. *Trowbridge*, 305 N. Y. 471.

The courts, however, have been increasingly accepting a contrary view which holds that such testimony concerning an extrajudicial identification should be considered as constituting an exception to the hearsay rule and in appropriate circumstances admitted for the purpose of corroborating courtroom identifications. An enlightening and persuasive discussion of this view is to be found in *Judy* v. *State*, 218 Md. 168.

Our attention has not been directed to, nor are we aware of, any case in which this court has passed upon the precise question raised by this exception. In the instant case, in our opinion, the circumstances are such that a decision on that issue need not be made. The record contains an abundance of evidence other than the testimony of the police officer to which objection is here made tending to establish the identity of Kieon as one of the participants in the crime. The circumstances being so, it is our opinion that even if it were held that such testimony was improperly admitted or that it was error to refuse to strike the testimony objected to, these defendants were clearly not prejudiced by such error. This exception is overruled.

The defendants' exceptions numbered 6 and 8 were taken to the action of the trial justice in sustaining the state's objections to certain questions asked during the cross-examination of a Cranston police officer who had taken defendant Sito from Pawtucket to Cranston at the time of

the commission of the offense. In one of these questions the witness was asked whether the Pawtucket police had placed defendant Sito under arrest, and the state's objection thereto was sustained. The second question was asked of the same witness during his recross-examination and was related to the time at which defendant Sito was arraigned.

It is well settled that the scope of cross-examination is usually within the sound discretion of the trial justice. It is the contention of defendants, however, that the trial court abused its discretion in limiting the cross-examination by sustaining the objections to such questions because these matters were relevant to the issue at trial and were not collateral and, therefore, cross-examination along these lines should have been allowed. From the context in which the first question appears in the transcript it appears that defendant was endeavoring to establish the time at which defendant Sito was arrested in Pawtucket, apparently for the purpose of sustaining defendant's alibi that he was in Pawtucket at the time the robbery was committed. The second question that related to the time of defendant Sito's arraignment is obviously irrelevant to the issue on trial.

If the question concerning the time of defendant Sito's arrest was an attempt to establish a fact relevant to the issue at trial and not a fact that is collateral in nature, we still do not perceive that its exclusion, even if error, would have prejudiced defendants. The record reveals an abundance of evidence which tends to prove the presence of defendant Sito in Cranston at the time of the robbery and of his participation therein. The only contradiction of that testimony is contained in his own testimony.

If, in the cross-examination of the police witness, further inquiry might have elicited some testimony relating to the time of Sito's arrest in Pawtucket which could have some probative force on his claim that he was not in Cranston at the time the robbery was committed, it could not reasonably be held to have had sufficient probative force to pre-

clude the jury from properly finding him guilty beyond a reasonable doubt of the offense charged. Such testimony, although favorable to defendant Sito, would be insufficient to impair the strong probative force of the evidence bearing on his guilt. The erroneous exclusion or inclusion of such an item of evidence, however relevant and material it might be, cannot be reasonably held to affect adversely the weight of the evidence tending to prove defendant's guilt beyond a reasonable doubt and is, therefore, harmless error. *State* v. *Lee*, 78 R. I. 46, 49.

There remains for our consideration defendants' exception numbered 9. It appears that late in the trial the prosecution informed the court that it desired to call to the witness stand a Cranston policeman for the purpose of adducing rebuttal testimony. The trial justice thereupon remarked: "His story will be his denial of the charges charged up to him, is that it?" Counsel for defendants thereupon moved, in effect, that the court's inquiry be stricken from the record, and after a brief colloquy the court noted his "objection," obviously intending to note an exception to the denial of the motion to strike for defendants.

We are unable to agree that the court's remark was of such a character as to amount to misconduct on his part. Clearly, what the court was doing was making an inquiry of counsel for the prosecution concerning the purpose for which he proposed to present this witness in rebuttal. Such an inquiry, in our opinion, was entirely proper. Ordinarily to premise prejudicial misconduct on remarks made by a trial justice, it must appear that they constituted an unwarranted attack on a party or his counsel sufficient to prejudice the jury or to be of such a character that they reasonably must be held to impair the impartiality of the trial. *Roy* v. *United Electric Rys.*, 52 R. I. 173. The inquiry made by the judge clearly did not have either of such effects in the case at bar, and this exception is therefore overruled.

The defendants' exception numbered 10 to the denial of

their motion for a new trial being neither briefed nor argued is deemed to be waived.

All of the defendants' exceptions are overruled, and the case is remitted to the superior court for further proceedings.

FROST, J., did not participate in the decision.

## ON MOTION FOR REARGUMENT.
### NOVEMBER 24, 1961.

PER CURIAM. After our decision in the above case was filed, the defendants were granted permission to present a motion for reargument. Pursuant thereto they have filed such a motion, setting out therein the particular reasons on which they base their contention that justice requires a reargument of the case.

We have carefully considered those reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*J. Joseph Nugent,* Attorney General, *Francis J. Fazzano,* Assistant Attorney General, for State.

*Leo Patrick McGowan,* for defendant Stanley M. Kieon.
*John F. Doris, Helen M. MacGregor,* for defendant Walter A. Sito.