UNITED STATES of America, Appellee,

v.

Simeon Jessamy COKE, Defendant-Appellant.

No. 113, Docket 28722.

United States Court of Appeals Second Circuit.

Argued Oct. 5, 1964.

Decided Dec. 7, 1964.

Edward Friedman, New York City, for defendant-appellant.

John R. Bartels, Jr., Asst. U. S. Atty., S. D. N. Y. (Robert M. Morgenthau, U. S. Atty. S. D. N. Y., and James M. Brachman, Asst. U. S. Atty., on brief), for appellee.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

After four days of trial a jury found Simeon Jessamy Coke guilty, as charged,

184

on all three counts of an indictment, alleging violations of the narcotics statutes, 21 U.S.C. § 173 and § 174. On each conviction he was sentenced to six years imprisonment, the sentences to be served concurrently. A prior trial before Judge MacMahon and a jury had ended in a mistrial because the jury was unable to agree on a verdict.

The appellant contends, among other things, that the court below erred in sustaining the Government's objection to a question, directed by defense counsel to a government agent, who was on the witness stand, seeking disclosure of the name of the informer who allegedly introduced the witness-agent to the appellant immediately prior to the first of the three sales in question.

The Government's evidence purported to show that the informer had, in addition to making the introduction, waited on the sidewalk outside of the building where the sale of the narcotics by the appellant to the agent Gonzalez allegedly took place, and that thereafter the informer and the agent departed together. While from the Government's own evidence it therefore appears that the informer was something more than a mere "tip-off" man and had, to a significant extent, participated in events which are alleged to have formed a part of the offense charged, the defendant made no claim in support of the admissibility of the question he asked by showing why knowledge of the informer's identity would be relevant and helpful to the defense or essential to a fair trial. There is nothing to indicate that between the

first and second trials the defendant sought to procure the name and address of the informer nor did he at any time advise the court that he needed the information in order that he might interview the informer or call upon him to testify. This evidential question arose early in the trial when the theory of the defense was not clearly formulated. In sustaining the Government's objection the trial judge did not close the door against a renewal of the question at a later stage,[1] but the defense did not do so. This court has recognized that there are circumstances under which the privilege against disclosure of the identity of an informer no longer applies, as enunciated in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). United States v. Holiday, 319 F.2d 775 (2 Cir. 1963); United States v. Cimino, 321 F.2d 509, 512 (2 Cir. 1963); United States v. Romano, 278 F.2d 202, 205 (2 Cir. 1960). See also Williams v. United States, 273 F.2d 781, 796 (9 Cir. 1960). In this case, however, the defendant in the course of the trial gave no reason at all why he was entitled to the name and address of the informer or why his request was something beyond the limits of the privilege.

Entrapment was not an issue and on appeal the appellant's counsel has for the first time claimed he sought the informer's testimony on the question of mistaken identity or fraud. Other witnesses identified the appellant and, absent a showing by the defense at the trial that the disclosure of the informer's name and address was necessary for a

1. "Q. The October 3rd transaction, sir, you say you were introduced to this defendant by some special agent, is that right? A. By an informer.
"Q. Will you describe this informer, sir? A. Describe him physically?
"Q. Yes, physically or any name or some description of this—
"Mr. Quinlan: I object to the name of the special employee.
"The Court: See if you can give a physical description. That will satisfy Mr. Friedman.

"A. The informer was a Negro male, about five feet nine, medium build and a brown complexion and at the time he was just wearing sport clothes.
"Q. This informer, you do know his name, sir, don't you? A. Yes, I know his name.
"Q. Will you give us the name of this man?
"Mr. Quinlan: I object.
"The Court: Objection sustained. It is irrelevant and I don't think it is desirable to go into that question unless it becomes relevant." Tr. pp. 31–32.

fair disposition of the case, the testimony of the informer may be assumed to have been, at best, merely cumulative. Under the circumstances it cannot be said that the trial court's ruling was an abuse of discretion. United States v. Simonetti, 326 F.2d 614 (2 Cir. 1964). See Roviaro v. United States, supra.

██ In the posture in which the evidence of the identity of the informer was left in the course of the trial, with no showing on the part of the defense that disclosure was called for, it was not error for the court to refuse to charge that a presumption arose against the government from the failure to call the informer, whose name and address were exclusively in its knowledge. As long as the privilege not to disclose the identity of the informer remained operative, no inference could be drawn against the government for not calling him to testify, and it was not reversible error for the trial judge to refuse the defense's request to charge on such a presumption on the additional ground that under the circumstances the informer's testimony would, at best, be only cumulative, particularly where defense counsel expressly stated that he took no exceptions to the instructions given. De Gregorio v. United States, 7 F.2d 295 (2 Cir. 1925); Wigmore, Evidence, 3rd ed. § 287.

██ Appellant's principal contention on this appeal is that the trial judge by excessive interference in the examination of the witnesses, by repeated rebukes and disparaging remarks directed at appellant's counsel and by marked impatience, all in the presence of the jury, displayed an attitude of partisanship which resulted in the denial of a fair trial and a deprivation of due process of law. While to some extent the admoni-

tions were merited, because of defense counsel's predilection for dilatory tactics and his argumentative interrogation of witnesses, nevertheless, we conclude that the comments of the trial judge were of such a nature that, in the context in which they were made, they must have improperly prejudiced the defense in the minds of the jurors. Where mild admonitions to counsel did not suffice, any sterner or more forceful directions which may have been warranted should have been given in the absence of the jury. Moreover, many of the comments do not appear from the record to have been at all justified. Although the judge's caustic and disparaging remarks were, for the most part, directed at defense counsel, they undoubtedly gave the jury the impression that the defendant's case was of little substance and was not worthy of very much attention.[2]

The principles applicable to a judge's conduct of both jury and non-jury trials have been discussed by this court and others in a number of cases, and there is no need to repeat or review them here. United States v. Ross, 321 F.2d 61 (2 Cir. 1963); Luttrell v. United States, 320 F.2d 462 (5 Cir. 1963); United States v. De Sisto, 289 F.2d 833 (2 Cir. 1961); United States v. Curcio, 279 F.2d 681 (2 Cir. 1960); United States v. De Fillo, 257 F.2d 835 (2 Cir. 1958); United States v. Ah Kee Eng, 241 F.2d 157, 62 A.L.R.2d 159 (2 Cir. 1957); and United States v. Brandt, 196 F.2d 653 (2 Cir. 1952).

██ There is only one other matter in the conduct of the trial to which specific reference needs to be made, and that is the way in which the defendant's motion, under Rule 29, for acquittal at the close of all the evidence,[3] was handled. Con-

---

2. See particularly, Transcript, pages 31–32, 100, 106, 108, 145, 151, 168, 174, 229, 244, 249, 253, 254–255, 265, 363–364, 367–368, 410 and 414.

3. "The Court: Do you wish to renew your motions at this time?
   "Mr. Friedman: Yes, your Honor, I will renew my motions.

"The Court: You are making a motion for a judgment of acquittal?
   "Mr. Friedman: Yes.
   "The Court: The motion is denied and your exception is noted.
   "All I am doing in deciding that is deciding that I can't decide it as a question of law, it is a question of fact for

trary to the better practice, it was heard in the presence of the jury. When the attention of the panel was focused on the ultimate issue of the guilt or innocence of the accused, the trial judge's abrupt denial of the motion following the repeated deprecating interjections in the examination of witnesses by the defendant's counsel, may well have implied that the defense was incompetent and a sham and that the jury should convict. Such damage could not very well have been prevented by the perfunctory instructions given.

In a case, which had previously ended in a mistrial, where the evidence to convict rested so heavily on the testimony of one witness, we cannot say that appellant was accorded a fair trial. The case is, therefore, reversed and remanded for a new trial.

the jury. I am not saying whether the government proved it [sic] case; all I am saying is that there is sufficient that it should go to the jury. For the record

Mr. Friedman makes that motion.
"How much time do you want to take in summation?" Tr. 413–414.