**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Martin DIHARCE–ESTRADA, Defendant-Appellant.**

No. 75–2642.

United States Court of Appeals, Fifth Circuit.

Jan. 29, 1976.

---

**3.** It is a matter of record that Judge Wood told the Diharce jury of his scheduled departure.

Raymond C. Caballero, El Paso, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., Frank B. Walker, Ronald F. Ederer, Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before COLEMAN, CLARK and IN-GRAHAM, Circuit Judges.

CLARK, Circuit Judge:

The trial of Martin Diharce-Estrada demonstrates that justice which is too swift may result in a denial of the right to a fair trial. The record of defendant's 5½ hour trial, which began after 7 in the evening and was concluded the next morning, is fraught with error. Hasty rulings combined with prosecutorial misconduct necessitate the exercise of our supervisory power over federal criminal trials to reverse the conviction.

Defendant was convicted by a jury of importation and possession with intent to distribute approximately 103 pounds of marijuana. 21 U.S.C. §§ 952(a), 960(a)(1), 841(a)(1). Several of the facts essential to sustain the charge against Diharce are undisputed. On the evening of September 26, 1974, defendant attempted to drive a pickup truck with a false bed containing contraband across the border at the El Paso port of entry. An inspector noted that the dimensions of the truck bed appeared abnormal, that the vehicle looked freshly painted and smeared with mud, and that defendant was visibly nervous. After directing defendant to a secondary search area and employing dogs specially trained to

detect the presence of drugs, officials searched the truck and uncovered 103 pounds of marijuana. Although advised of his constitutional right to remain silent, Diharce denied knowledge of the existence of the contraband and explained that he had purchased the truck two days before from a man whose name he did not know. Later, in response to questioning from another agent, defendant changed his story, this time claiming that he borrowed the truck from an unidentified person to purchase parts in El Paso for his own car, an inoperative Volkswagen.

The thrust of Diharce's defense was that the government's case was insufficient to prove that defendant knew of the presence of marijuana in the truck. To support his position, defendant argued to the jury that the investigation of the offense had been inadequate and thus inconclusive. Ownership of the truck was never determined; nor was any attempt made to take fingerprints from the truck bed. Further, defendant's pretrial statements were not transcribed, even though Diharce spoke only broken English and it was not unlikely that, without the aid of an interpreter, misunderstandings could result.

The evidence adduced by the government on the issue of defendant's knowledge was scant. The thin proof of this crucial element made it essential that the trial be carefully conducted to ensure that the jury would reach a just verdict. Instead, we see a trial which carried heavy potential for error from the outset. The Diharce jury panel had been instructed to report for duty at 9:00 a. m. on December 5, 1974, and thus had been waiting to commence their work since that time. Because of an extremely overcrowded docket, however, the previous trial could not be concluded until well after normal working hours. The attorney representing Diharce had also represented the defendant in the previous trial. At 7:25 p. m. when the trial judge opened Diharce's trial, he began by apologizing to the jury for the delay. He explained that other recent extra-length court sessions had extended well into the night and that it was essential for him to finish all scheduled trials in El Paso by 9:00 p. m. Friday (December 6) so he could catch his plane to San Antonio. Again, just before the witnesses were brought in, the judge expressed his hope that the case would be wrapped up by noon Friday.

The evidentiary portion of the trial was very short, lasting less than three hours. Consistent with the court's opening remarks, the emphasis during this stage of the proceedings was on speed. Prior to the trial's commencement, defense counsel had agreed with the court to close his case before the night recess on December 5 and the court indicated that it planned that arguments would be heard and instructions given on the morning of December 6. Before the close of the government's case-in-chief, however, the judge changed his mind and decided to require the attorneys to argue the case that evening. The reason for that change was a defense request to postpone the closing of the evidence until the morning to allow Diharce's counsel to produce an expert impeachment witness who would discuss the feasibility of taking fingerprints. In addition to denying the request, the judge, in the jury's presence, accused defense counsel of trying to take advantage of the court and very plainly intimated that he was to be punished by being required to complete closing arguments before recess.

When the government announced that it had completed its case, and at a time when the jury was still present, the judge asked defense counsel if he wanted to move for acquittal. The attorney responded affirmatively. Then, still in the jury's hearing, the court summarily stated that the motion was denied. In a side bar conference out of the jury's earshot, defense counsel moved for a mistrial on the basis that the court's action in denying his motion in open court prejudiced his client's case. The motion was denied.

The tense and hurried atmosphere did not diminish with the presentation of the

defense. At one point, the court became upset with defense counsel because the name of a defense witness did not appear on the witness list submitted by defendant. In front of the jury, the trial judge remarked that the name was not on his list and ordered counsel to approach the bench. Stating that defense counsel's conduct was exasperating, the court rebuked the attorney for allegedly failing to comply with the spirit and mandate of the court's omnibus procedures.

In addition to objecting to the trial judge's rulings and management of the trial, defendant also recorded protests against the action of the prosecuting attorney. In his closing argument, the government attorney stated that he personally did not believe defendant's story and that no reasonable juror could. In response to defendant's objection, the court cautioned the jury not to regard the prosecutor's statements as evidence. Toward the end of his remarks, the prosecutor speculated as to whether another person he named might be engaged in a conspiracy with defendant to import marijuana. Defendant objected, stating that it was irresponsible for the prosecutor to implicate a party with no demonstrable connection with the case. The court overruled the objection.

Court recessed at 10:25 p. m. and the jury was ordered to return in the morning to receive instructions and begin deliberations. At 8:30 the next morning, the charge was given and the case was submitted to the jury at 9:22 a. m. Approximately 1½ hours later, the jury returned a unanimous verdict of guilty on both counts.

In this appeal, Diharce's primary assignments of error involve the sufficiency of the evidence and the conduct of the judge and prosecuting attorney. Since we find that the cumulative effect of the errors committed during the trial requires reversal, we need not reach the question of the sufficiency of the evidence.

■ Our decision marks no departure from the settled rule that the trial judge has a broad discretion in the management of the trial and that a reviewing court will be reluctant to interfere absent a clear showing of abuse. *United States v. Gomez-Rojas*, 507 F.2d 1213, 1223 (5th Cir. 1975). However, this court is duty bound to exercise its supervisory jurisdiction to set aside trial court verdicts reached by methods which fall so far short of the mark of fairness. It would grant an undue deference to a trial court's management decisions to ignore the claims of prejudice raised here. The record reveals that Diharce's trial was conducted in such a hasty fashion that it failed to accord with fundamental fairness.

■ Fully acknowledging that we possess the benefit of a calmer hindsight than could have been available to the trial judge at the time of these pressured events in El Paso, we conclude that it was error to start the trial proceedings at 7:30 p. m., before a jury that had spent the entire day waiting to serve, and to demand that the presentation of evidence and arguments be completed the same evening. Defense counsel was given only a momentary break between cases and it is reasonable to assume that he was at far less than his best professionally. The court's opening remarks to the jurors emphasizing the dispatch he expected, coupled with the immoderate treatment accorded defense counsel for his allegedly unjustified attempts to delay the trial, can only be judged by us to have put undue pressure on the jury to reach a verdict more swiftly than the ends of justice will allow. In *United States v. Gordy*, 526 F.2d 631 (5th Cir. 1976), decided today, we held that this hectic El Paso court session contributed to a premature declaration of mistrial in the trial just preceding Diharce's. We cannot be sure that the harmful effects of the atmosphere did not prejudice Diharce as well.

Of course there have been, and doubtless will be, times when the necessity for irregular trial schedules will develop. However, the abbreviated nocturnal trial accorded Diharce simply will not pass

muster as a fair way to resolve the close factual issues in his case. Because we base our decision on the conduct of the trial as a whole, we need not decide whether this management error alone was sufficiently prejudicial to require reversal.

■ The denial of defendant's motion of acquittal in the presence of the jury was also error in the context of this case. Other circuits have recognized that a perfunctory denial of an acquittal motion in open court presents the danger that the jury will believe that the trial judge is expressing his opinion that defendant is guilty.[1] In a close case where no cautionary instruction is subsequently given, this danger is increased. Unlike the exchange that occurred in *United States v. Anderson*, 471 F.2d 201, 204 (5th Cir. 1973), the defendant in the case at bar did not initiate the discussion which led to the open-court denial and thus there is no question of waiver or invited error.[2] Again, we create no broad rule for future cases. We say no more than that when combined with the disparaging remarks made to defense counsel in the course of the trial, the judge's decision not to follow the preferred practice of hearing and disposing of the motion outside the presence of the jury constituted prejudicial error in this case.

In his appellate brief, defendant contends that 10 comments made by the government attorney during closing argument were improper. Since objections were made to only two of these remarks, we pretermit decision on whether the others rise to the level of plain error. *See United States v. Webb*, 463 F.2d 1324, 1328 (5th Cir.), *cert. denied*, 409 U.S. 986, 93 S.Ct. 338, 34 L.Ed.2d 251 (1972).

Referring to defendant's explanation of his possession of the truck, the prosecutor made the following statement:

> Wait a minute. Now, the finger of suspicion starts to point to Mr. Estrada. Now wait a minute, you bought it from a man and you don't know who? Now, what kind of story is that? Who believes that? I certainly don't. I maintain any reasonable jury would not. He bought it from somebody that . . . .

When defendant objected, the court admonished the jury not to treat the lawyer's remarks as evidence, but did not specifically instruct them to disregard the comment.

■ This court has often disapproved of a prosecutor's expression of his personal belief in the defendant's guilt. *See, e. g., United States v. Dawson*, 486 F.2d 1326, 1330 (5th Cir. 1973); *McMillian v. United States*, 363 F.2d 165, 168 (5th Cir. 1963). *Cf.* ABA Code of Professional Responsibility DR 7–106(C). The jury is the sole judge of whether the defendant's story is credible. The prosecutor clearly overstepped his bounds by insisting that it would be unreasonable

---

1. *See United States v. Coke*, 339 F.2d 183, 185–86 (2d Cir. 1964) (open-court denial plus disparaging remarks; conviction reversed). *See also United States v. Tobin*, 426 F.2d 1279 (7th Cir. 1970); *Tanner v. United States*, 401 F.2d 281 (8th Cir. 1968), *cert. denied*, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969); *United States v. Lauer*, 287 F.2d 633 (7th Cir.), *cert. denied*, 368 U.S. 818, 82 S.Ct. 34, 7 L.Ed.2d 24 (1961).

2. In the case at bar the following took place in the presence of the jury:

> The Court: Mr. Caballero [counsel for defendant], do you want to make a motion for acquittal at this time?
> Mr. Caballero: Yes, Your Honor.
> The Court: All right, it will be denied. All right, let's proceed.
> Mr. Caballero: Your Honor, at this time I would like with the Court Reporter and counsel to approach the bench.
> The Court: All right.
> [At the bench and not in the hearing of the jury]
> Mr. Caballero: I want to place in the record the fact that the judge just stated he denied our motion for judgment of acquittal in front of the jury. And I object to that as being very prejudicial and I would move for a mistrial.
> The Court: I will deny that motion.

to harbor any doubt as to defendant's guilt. Moreover, assertions of personal belief may imply that the prosecutor possesses extra-record knowledge that is harmful to defendant. This remark was not where the implication ended. The prosecutor's closing argument also included other comments that could have easily conveyed the impression that the government knew more than it was permitted to relate in court. At one point, the prosecutor stated:

And you will see the floorboard of the bed of that pickup. And you will see where it was painted and you'll see the mud on it. I wonder who put that in there. We know we've got one person who is buying auto parts and likes to tinker with mechanical things, and we know that he is working with someone else, somebody named Pepin. I wonder if Pepin plays any part in this. I wonder if Mr. Estrada was bringing over . . ..

The court erroneously overruled defendant's objection and thus the jury was left to speculate as to whether there might be gaps in the government's case which were due to the application of restrictive evidentiary rules rather than to the lack of evidence.

Many years ago, the United States Supreme Court cautioned that in close cases improper remarks by the prosecuting attorney may carry "much weight against the accused when they should properly carry none." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). That warning is especially appropriate here. Combined with the errors committed by the trial court, the prosecutor's misconduct cannot be dismissed as harmless.

▪ Based upon the combination of errors and prejudicial circumstances recited, this court is left with the definite and firm conviction that Diharce did not receive a fair trial. The conviction is reversed and the cause is remanded to the district court with directions to award the defendant a new trial.

Reversed.