COMMONWEALTH *vs.* ROLAND S. STROUD.

Hampden. January 3, 1978. — May 17, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Evidence,* Admissions and confessions, Relevancy and materiality. *Constitutional Law,* Admissions and confessions, Waiver. *Arrested Person. Waiver. Practice, Criminal,* Admonition of counsel by judge, Voir dire, Appearance by counsel.

Statements made by a defendant to a police officer prior to being apprised of his statutory right to use a telephone were properly admitted in evidence at a criminal trial where the defendant's determination to make a statement was completely voluntary, where the opportunity to make a telephone call was not intentionally withheld, and where there was no prejudice to the defendant. [268-270]

At a criminal trial there was no error in admitting in evidence inculpatory statements volunteered by the defendant to a police officer while in an airplane bound for Massachusetts even though the officer did not repeat his earlier Miranda warnings in full. [270-271]

Where the defense counsel in a criminal case moved for a directed verdict in the presence of the jury, the judge's mild admonition of defense counsel and denial of the motion in the jury's presence did not constitute prejudicial error. [271-272]

The fact that the prosecutor at a criminal trial held a blood-stained shirt in his hand in the jury's view prior to its introduction in evidence did

not constitute reversible error where the defendant had not requested a voir dire on its admissibility and where the shirt was properly admitted in evidence. [272-273]

There was no merit to a defendant's contention that the judge at a criminal trial erred by allowing the trial to proceed without requiring defense counsel to file an appearance in accordance with Rule 19 of the Superior Court. [273]

INDICTMENT found and returned in the Superior Court on November 9, 1972.

The case was tried before *Linscott, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Joseph F. Flynn* for the defendant.

*L. Jeffrey Meehan*, Special Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant Roland S. Stroud was tried before a Superior Court jury on an indictment charging him with the murder of one Noah Dennis. The jury found the defendant guilty of manslaughter, and the judge imposed a sentence of eight to ten years at the Massachusetts Correctional Institution at Walpole.

The defendant appeals the conviction, arguing that the trial judge erred by: (1) allowing in evidence certain inculpatory statements which the defendant had made to Tennessee and Massachusetts police officers; (2) denying the defendant's motion for a directed verdict in the presence of the jury; (3) admitting in evidence certain bloodstained garments alleged to have been worn by the victim at the time of the incident; and (4) allowing trial counsel to represent the defendant without determining whether the attorney had filed an appearance in accordance with Rule 19 of the Superior Court (1954). We conclude that there was no error. Accordingly, we affirm the conviction.

The pertinent facts are as follows. On the evening of September 4, 1972, pursuant to an invitation by Dennis, the defendant and his girl friend went to Dennis's apartment for drinks. The couple arrived at the apartment building at ap-

proximately 10:45 P.M. On ascending the stairs, they saw Dennis on the landing outside his second floor apartment. There was testimony tending to show that Dennis was highly intoxicated.

Although there is conflicting evidence as to the specific details, it is clear from the record that initial verbal exchanges between Dennis and the defendant soon became hostile. Shortly thereafter, a fight ensued. The struggle continued down the staircase and into the front hallway. The defendant's last blows pushed Dennis against the front door of the building and outward onto the cement stoop.

Several bystanders testified that they observed the fight. There was evidence that Dennis appeared to be unconscious, and that he was bleeding profusely in the areas of the chest and face. Although subsequent to the fight a red-stained knife was found in the vicinity, all witnesses testified that they did not see a knife in the defendant's hand during the struggle. Nevertheless, the medical examiner testified that Dennis had suffered multiple stab wounds, and that his death resulted from a penetrating stab wound to the chest.

Immediately after the incident, the defendant left the scene. Four days later, the defendant appeared in the Greyhound Bus Terminal in Memphis, Tennessee, where, at approximately 12 P.M., he volunteered to a security guard that he had been involved in a fight in Massachusetts, and that a man had been killed. While the security guard summoned police officers, the defendant called the Holyoke police department to announce that he was giving himself up. He also called his girl friend.

At approximately 1:30 A.M., the defendant voluntarily accompanied police officers to the Memphis police department and met with one Detective James Hester. The defendant told Detective Hester that he was wanted for murder in Holyoke, Massachusetts, and that he wanted to surrender himself. Detective Hester placed the defendant under arrest and gave him Miranda warnings. At approximately 1:40 A.M., the defendant made a brief oral state-

ment admitting that he had killed Dennis by stabbing him.[1] At 2 A.M., after calling the Holyoke police to confirm the defendant's assertion that there was a warrant for his arrest in Massachusetts, Detective Hester offered the defendant the use of a telephone. The defendant refused.

On September 13, 1972, Officer Richard Page of the Holyoke police department arrived in Memphis to escort the defendant back to Massachusetts. At approximately 1 P.M., Officer Page met the defendant at the Shelby County jail and immediately advised him of his Miranda rights. The defendant acknowledged that he understood the warnings but did not want to make a statement.

The following day, on an airplane bound for Massachusetts, the defendant initiated a conversation with Officer Page about the incident. Officer Page reminded the defendant that the warnings he had been given the previous day still applied, and that anything the defendant said could be used against him. The defendant then told Officer Page that he had stabbed Dennis with a knife, but had done so in self-defense, thinking Dennis had a gun.

1. The defendant contends that it was error to admit in evidence inculpatory statements which were made in the Memphis police station before he was apprised of his statutory right to use a telephone. We disagree.

The relevant statutory provision, Tenn. Code Ann. § 40-806 (1975), is as follows: "No person under arrest . . . shall have his name entered on any . . . record until such time that said person has successfully completed a telephone call . . . without undue delay. One (1) hour shall constitute a reasonable time without undue delay. However, if the arrested person does not choose to make a telephone call, then he shall be 'booked' or docketed immediately."

This statute, like its Massachusetts counterpart,[2] requires the police promptly to disclose to the person arrested that he

[1] The statement was transcribed immediately by a stenographer at the Memphis police station.

[2] General Laws c. 276, § 33A, as amended through St. 1963, c. 212, provides, in pertinent part: "The police official in charge of the station

has a right to make a telephone call. If the individual chooses not to exercise this right, he must be booked; if the individual desires to use a telephone, he must be permitted to do so within one hour.

The record shows that Detective Hester did not inform the defendant immediately of his statutory right to make a telephone call. There is every indication, however, that the defendant's determination to make a statement at the Memphis police station was completely voluntary. The record shows that his decision to confess was unprompted by *any* official conduct, and, as such, was wholly unrelated to any possible deprivation of his statutory rights. In these circumstances, there was no error in admitting the statements in evidence.

From the time he arrived at the Greyhound Bus Terminal in Memphis, the defendant's actions evidenced a consistent desire to surrender himself to Tennessee authorities and to confess his involvement in the Holyoke incident. The defendant's initial decision to speak about the incident to a security guard was an independent one, as was his decision to call the Holyoke police to notify them of his intention to surrender himself. At the terminal, the defendant fully cooperated with the Memphis police while they attempted to check his story through the National Crime Information Center in Washington, D.C. Thereafter, the defendant agreed to accompany the police to the station where he voluntarily made a statement to Detective Hester.

This was not a situation in which the police intentionally withheld the opportunity to make a telephone call until the defendant confessed. Contrast *Commonwealth* v. *Jones*, 362 Mass. 497, 503 (1972). On the contrary, the judge found that the defendant wanted to talk about the incident as soon as he was placed under arrest, and even before Detective

---

. . . shall permit the use of the telephone . . . . Any . . . person [held in custody] shall be informed forthwith upon his arrival . . . of his right to . . . use the telephone, and such use shall be permitted within one hour thereafter."

Hester had an opportunity to warn him of his Miranda rights.

The defendant would be equally hard pressed to characterize the half-hour interval between his arrival at the police station and his opportunity to use the telephone as some sort of "incommunicado detention," contrast *Commonwealth* v. *Jones, supra,* particularly in light of the fact that he took the opportunity to inform a friend of his whereabouts just moments before he was taken to the police station. Thus, in all the circumstances, even if we assume that there was a violation of the defendant's statutory rights, there was clearly no prejudice to the defendant.[3]

2. The defendant challenges the admissibility of certain inculpatory statements made to Officer Page while in an airplane bound for Massachusetts. We conclude that the statements were properly admitted.

The defendant concedes that, on the day prior to the flight, Officer Page had warned him fully of his Miranda rights. Further, the defendant makes no argument that his initial decision to remain silent was not "scrupulously honored" by the police. Cf. *Michigan* v. *Mosley,* 423 U.S. 96, 104 (1975). Rather, the defendant contends that, on the following day, when he decided to talk about the incident, Officer Page was required to repeat the Miranda warnings in full. We do not agree.

The judge found that, on the flight to Massachusetts, it was the defendant, and not Officer Page, who initiated a conversation about the case. The record shows that the defendant was "anxious to describe his connection with the case, and did so voluntarily." It is well settled that, in these

---

[3] We do not reach in this case consideration of two aspects which might well concern us if the facts disclosed possible prejudice to the defendant by failure of the Tennessee police to afford to the defendant his telephone rights under the Tennessee statute: (1) What effect would the violation of a Tennessee statute have on a Massachusetts criminal proceeding? (2) What significance would attach if telephone privileges afforded to the defendant by the Tennessee police complied with the Massachusetts, but not with the Tennessee, telephone statute?

circumstances, Miranda warnings are not required at all. See *Commonwealth* v. *Stavros*, 4 Mass. App. Ct. 848, 849 (1976); *Commonwealth* v. *Black*, 4 Mass. App. Ct. 512, 516 (1976); *Commonwealth* v. *Swenor*, 3 Mass. App. Ct. 65, 68 (1975). Indeed, in *Miranda* itself, the Supreme Court made clear that "[t]here is no requirement that police stop a person who . . . states that he wishes to confess to a crime . . . . Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." *Miranda* v. *Arizona*, 384 U.S. 436, 478 (1966). See *Commonwealth* v. *Frongillo*, 359 Mass. 132, 135-136 (1971); *Commonwealth* v. *Rawlins*, 352 Mass. 293, 297-298 (1967).

3. At the close of the Commonwealth's case, and in the presence of the jury, trial counsel [4] moved for a directed verdict. The judge then stated: "It's very unusual to make a motion in the presence of a jury. I'm rather surprised at you. As long as you made it in the presence of the jury, I will deny it in the presence of the jury. Your rights are saved." The defendant now argues that these comments constituted prejudicial error. We do not agree.

First, we reject the defendant's contention that, by denying the motion for a directed verdict in the presence of the jury, the judge impermissibly commented on the sufficiency of the Commonwealth's case. At most, the judge's action communicated his determination that the evidence was sufficient to warrant a jury decision of guilt or innocence. Cf. *United States* v. *Anderson*, 471 F.2d 201, 204 (5th Cir. 1973). Such a determination is implicit whenever a case is submitted to a jury.

We note further that, once defense counsel made the motion for a directed verdict in the jury's presence, it would have been a futile gesture for the judge to excuse the jury so as to prevent them from hearing his decision on the matter. Even if the judge had excused the jury, his determination to

---

[4] The attorney representing the defendant at trial was not the defendant's counsel on appeal.

deny the motion for a directed verdict would have been evident by the very fact that the trial resumed.

Finally, we find no prejudicial error in the judge's expression of surprise at defense counsel's tactics. The judge's comments do not show him "playing a partisan or overzealous role or expressing his opinion on the facts or departing from standards of courtesy and dignity." *Commonwealth* v. *Haley*, 363 Mass. 513, 522 (1973). See generally *Commonwealth* v. *Leventhal*, 364 Mass. 718, 724 (1974); *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 227 (1967); *Commonwealth* v. *Borges*, 2 Mass. App. Ct. 869, 870 (1974). Contrast *United States* v. *Coke*, 339 F.2d 183, 185 (2d Cir. 1964). His admonition to defense counsel was a relatively mild one, and was an isolated incident in the course of the trial. As such, it did not rise to the level of prejudicial error.

4. The defendant contends that the judge erred in allowing demonstrative evidence to be placed in the jury's view prior to its introduction in evidence. By this argument, the defendant refers to a point in the trial in which the district attorney held a bloodstained shirt in his hand before asking the witness to identify it.

It is the defendant's theory that, where the Commonwealth seeks to introduce demonstrative evidence, a voir dire is essential to ensure that potentially inadmissible evidence does not affect the jury by its mere display in the court room. The defendant advances this argument even in light of the facts that no voir dire was requested at trial, and that four months prior to trial the defendant's motion to inspect real evidence had been allowed, giving him the opportunity to settle the issue of admissibility in a pretrial motion to suppress. There is no merit to the defendant's contention.

We point out first that the shirt was properly admitted in evidence. Although the defendant characterizes the evidence as "inflammatory," we conclude that the shirt had probative value with respect to the manner in which the victim died, a material issue in the case. See *Commonwealth* v. *Lamoureux*, 348 Mass. 390, 393 (1965). As such, its admissibility was a question to be determined by the trial

judge in the exercise of his discretion. *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279 (1962). *Commonwealth* v. *Lee*, 324 Mass. 714, 719 (1949), and cases cited. We perceive no abuse of discretion here.

Where the judge properly admitted the shirt in evidence, we see no prejudice to the defendant in the fact that the jury might have seen the exhibit just moments before it was actually introduced. The district attorney acted appropriately in showing the bloodstained shirt to the witness in order that the witness could identify it as the one the victim wore on the night of the incident. There is no indication that the district attorney flaunted the evidence before the jury or presented it in an inflammatory manner. Thus nothing in the district attorney's attempt to introduce the shirt in evidence rises to the level of reversible error.

5. The defendant retained as his counsel one Mr. Roger R. Pouliot, who, at the arraignment proceedings, filed an appearance in accordance with Rule 19 of the Superior Court (1954). Subsequent to the arraignment, the defendant was represented by another lawyer, who did not file an appearance. This lawyer represented the defendant in both the District and Superior Courts.

The defendant now argues that the judge committed reversible error by allowing the trial to proceed without requiring defense counsel to file an appearance. There is no substance to this argument. In neither the District Court nor the Superior court proceedings did the defendant give any indication that he objected to the change of counsel. On appeal, the defendant makes no claim that his representation below was ineffective, and demonstrates no particular prejudice to him on his counsel's failure to comply with Rule 19.

*Judgment affirmed.*