STATE

v.

Joe Willie ROGERS.

No. 78–69–C.A.

Supreme Court of Rhode Island.

Sept. 29, 1980.

Dennis J. Roberts, II, Atty. Gen., Joel D. Landry, Asst. Atty. Gen., for plaintiff.

John A. MacFadyen, III, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

The defendant was charged by indictment on October 13, 1976, with one count of kidnapping and with one count of rape. A Superior Court jury returned verdicts of guilty on each count. On this appeal, the defendant contends that the trial justice in two instances impermissibly influenced the jury and thus deprived him of his right to a fair trial.

The trial commenced on March 2, 1977, with the testimony of the complaining witness (complainant). She testified that in the late evening of August 21, 1976, she walked alone from Cranston for about an hour to a friend's house in South Providence. After finding no one at her friend's home, she left and began walking back to her residence in Cranston. The complainant testified that while she was walking on Broad Street, a car pulled up and a man jumped out of the car. Her testimony indicates that the man grabbed her, forced her into his car, and proceeded to drive to a nearby apartment building. She then detailed how the man forced her to accompany him into an apartment and to have sexual intercourse with him without her consent. At the trial, complainant identified defendant as the man who had accosted her that evening. The state presented other witnesses who in various ways tended to corroborate complainant's testimony. The defendant presented no evidence. His defense was directed toward impeaching the complainant's credibility and her identification of defendant as the man who had raped her.

The state rested its case on Friday afternoon, March 4, 1977, and the trial justice excused the jury until the following Monday. In an ensuing conference in chambers, defense counsel moved for a judgment of acquittal on each count. The court denied defendant's motions but gave no reasons for its denial because defendant had not rested his case. On Monday morning outside the jury's presence, defense counsel informed the court that defendant and he, as a result of consultation over the weekend recess, had decided to present no witnesses and that defendant was consequently ready to rest before the jury. While in chambers, defense counsel also renewed his motions for judgments of acquittal on each count. In light of defendant's announced intention to rest before the jury, the trial justice then explained his reasons for denying defendant's motions to acquit.

Following that colloquy in chambers, the trial justice requested the sheriff to escort the jury into the courtroom. After the jury entered, defendant formally rested before them. Immediately thereafter, the trial justice and defense counsel entered into the following exchange in the jury's presence:

"THE COURT: Do you press your motions, Mr. Casparian?

"MR. CASPARIAN: Yes, your Honor, the motions previously made to your Honor, I renew them at this time, if the Court, please.

"THE COURT: Motions for judgment of acquittal on both counts are denied."

Defense counsel objected and, at an ensuing bench conference out of the jury's earshot, moved for a mistrial based on the trial justice's express denial of defendant's motions for acquittal in the jury's presence. Defense counsel moved alternatively that if the motion to pass were denied, a cautionary instruction be given to the jury. The trial justice reserved decision on defend-

ant's mistrial motion and stated that if at the appropriate time he felt he could not grant a sufficient cautionary instruction, he would then rule on the motion to pass. After further brief proceedings, defense counsel requested a recess during which he renewed his motion for a mistrial, arguing that the court's remarks before the jury were manifestly prejudicial to defendant. Defense counsel also withdrew his earlier alternative request for a cautionary instruction and asserted that any cautionary instruction would be objectionable. The court denied defendant's motion, and both sides proceeded with their closing arguments to the jury. Before instructing the jury, the trial justice permitted defendant an opportunity to request a cautionary instruction. The defendant rejected the opportunity and moved once again for a mistrial. The trial justice denied that motion also.

On this appeal defendant argues that the trial justice's refusal to pass the case deprived him of his constitutional rights to a fair trial. Referring to the opinion in *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), defendant reminds us that "[T]he influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' " *Id.* at 470, 53 S.Ct. at 699, 77 L.Ed. at 1325. The defendant claims that the jury at his trial probably perceived the court's denial of his motions for acquittal to mean that the trial justice thought he was guilty. Proceeding on the premise that no statement made before a jury could be so damaging as one implying that the trial justice believes that a defendant is guilty, defendant concludes that the trial justice's remarks irreparably influenced the jury's deliberations to his prejudice. In added support of his claim, defendant refers us to the cases of *State v. Hull*, 106 R.I. 285, 258 A.2d 791 (1969) and *State v. Harris*, 89 R.I. 202, 152 A.2d 106 (1959), where we stated that a trial justice invades the province of the jury if he conveys to the jury his impressions of the weight they should give to any of the testi-

mony. He argues that denial of his motions for judgment of acquittal within the hearing of the jury is tantamount to the practice that we denounced in those cases. The defendant's position both at trial and now on appeal is that "there was no way to dispel the prejudicial effect of the open court denial, and that a cautionary instruction would compound the harm already done."

Courts have recognized that a trial justice should, in accord with the preferred practice, hear and dispose of motions for judgment of acquittal outside the jury's presence. *United States v. DiHarce–Estrada*, 526 F.2d 637, 641 (5th Cir. 1976); *Tanner v. United States*, 401 F.2d 281, 285 (8th Cir. 1968); *cert. denied*, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969); *United States v. Coke*, 339 F.2d 183, 185–86 (2d Cir. 1964). In *United States v. Coke*, 339 F.2d 183 (2d Cir. 1964), before disposing of the defendant's motion for judgment of acquittal, the trial judge had repeatedly directed disparaging remarks and rebukes at defense counsel, which behavior "undoubtedly gave the jury the impression that the defendant's case was of little substance and was not worthy of very much attention." *Id.* at 185. Following those repeated comments and observations, the trial judge abruptly denied the defendant's acquittal motion. The reviewing court concluded that the abrupt denial of the defendant's acquittal motion "may well have implied that the defense was incompetent and a sham and that the jury should convict." *Id.* at 186. Under those circumstances it ruled that the trial judge's perfunctory cautionary instructions were insufficient to accord the defendant a fair trial. In *United States v. DiHarce–Estrada*, 526 F.2d 637, 641 (5th Cir. 1976), the court declined to create a broad rule. Rather, it ruled in light of a record "fraught with error" that "when combined with the disparaging remarks made to defense counsel in the course of the trial, the judge's decision not to follow the preferred practice of hearing and disposing of the motion outside the presence of the jury constituted prejudicial error   *   *   *.*" *Id.* at 641.

The unusual circumstances in *Coke* and *DiHarce–Estrada* when combined with the hearing and disposition of the motion for judgment of acquittal before the jury led to the rulings of prejudicial error.

■ Although we agree that motions for judgment of acquittal should be heard and disposed of outside the jury's presence, the preceding cases suggest that a contravention of that policy without more contributing factors does not automatically deprive a defendant of a fair trial. The trial record before us contains none of the recurring disparagement considered by the courts in *United States v. Coke* and *United States v. DiHarce–Estrada*, both *supra*. We are thus left to determine whether the trial justice's denial of defendant's motions for judgment of acquittal in the jury's presence without more constituted prejudicial error.

■ On such a record, we are guided by the decision of the court in *United States v. Anderson*, 471 F.2d 201 (5th Cir. 1973), referred to by neither party. The circumstances of that case are strikingly similar to those now before us. It is true that the exchange in *Anderson* was initiated by the defendant's attorney, whereas in this case the trial justice initiated the exchange that resulted in the challenged remarks. That distinction appears to have played no role in the court's ruling,[1] which we find to be persuasive authority concerning the issue before us. In rejecting the defendant's contention that the denial of his acquittal motion before the jury was error, the court concluded:

"At most this ruling communicated to the jurors that the judge considered the evidence sufficient to warrant a jury decision of guilt or innocence. This determination by the trial judge is always implicit in his submission of the case to the jury; its communication to the jurors by denial of the motion for acquittal in the jury's presence was not error." *Id.* at

204; *accord Commonwealth v. Stroud*, 375 Mass. 265, 376 N.E.2d 849, 853 (1978).

■ We concur with those observations as applied to the record in this case. We gain assurance from the trial justice's general instructions to the jury after closing arguments, in which he informed them that they were charged with the duty of determining the facts, based on the evidence that they found credible. Under the circumstances we conclude that the trial justice's remarks are not of such a character that they reasonably must be held to have impaired defendant's right to a fair trial. *See State v. Kieon*, 93 R.I. 290, 298, 175 A.2d 284, 289 (1961).

## II

After receiving formal instructions, the jury retired to deliberate at 11 a. m. on March 8, 1977. They returned to the courtroom at 1:54 p. m. with a request that certain testimony be repeated and with a question on the elements of the crime of rape. After excerpts of the record were read, the jury resumed deliberations at 2:20 p. m. Once again at 4:08 p. m. the jury returned to the courtroom with a request as indicated by the following remarks made by the trial justice to the jury:

"THE COURT: The following two messages were received by the Court: I request a conference with the judge to discuss the attitude of a juror. Followed by a message that one of the jurors is drawing on his own experiences of arrest and time spent in the A.C.I. and letting it influence his judgment and he is unable to make a decision."

Immediately after his restatement of the messages, the trial justice delivered a supplementary charge:

"Now, ladies and gentlemen of the Jury, the Court is not permitted to interfere or involve itself in any way with the deliberations of a Jury. It is your solemn

---

1. In *United States v. DiHarce–Estrada*, 526 F.2d 637, 641 (5th Cir. 1976), the same court suggested that if a defendant initiates the exchange leading to the open–court denial of a motion for judgment of acquittal, a question of waiver or invited error is raised. *See also Commonwealth v. Stroud*, 375 Mass. 265, 376 N.E.2d 849, 853 (1978).

responsibility to decide your verdict based on the facts, based on the evidence presented to you and based on the law as I gave it to you.

"Now, in a large proportion of cases, and perhaps strictly speaking, in most all cases, absolute certainty of all twelve cannot be attained or expected. However, you must examine the question with candor and frankness and with proper regard and deference to the opinion of others. When you were first brought into this courtroom last Tuesday, you were told what was to be expected of you. You were asked whether you would fairly and impartially listen to all of the testimony that would be presented and you took and [sic] oath that you would honestly consider everything that was presented here and give your honest decision regardless of any partiality or any other outside interest.

"I'm going to appeal to you to go back to the jury room and be frank with each other. Be willing to listen to each other, and try hard to arrive at a decision which is important to both the State and to this Defendant. If after further deliberation it becomes apparent that you cannot reach a unanimous verdict, then I will call you down and I will handle the matter as I am required to do under the law.

"Sheriff, take the Jury, please."

Defense counsel objected to that charge as the jury left the courtroom to resume their deliberations. One minute after departing, the jury reentered the courtroom and returned verdicts of guilty on both counts.

The defendant compares the language of the charge given to that of the *Allen* charge, so-called, which was upheld by the United States Supreme Court in *Allen v.*

*United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), but which has been the subject of strong criticism in more recent decisions. *See, e. g. United States v. Amaya,* 509 F.2d 8, 12–13 (5th Cir. 1975); *United States v. Flannery,* 451 F.2d 880, 883 (1st Cir. 1971); *United States v. Thomas,* 449 F.2d 1177 (D.C. Cir. 1971); *State v. Thomas,* 86 Ariz. 161, 342 P.2d 197 (1959); *see generally A. B. A. Project on Minimum Standards for Criminal Justice, Trial by Jury,* § 5.4(b) and Comment (approved draft 1968). He contends that the trial justice's charge viewed in light of the circumstances was more prejudicial than the charges upheld in *Allen* and its progeny. Specifically, defendant points to disclosure of the jurors' numerical split, the charge's reference to the jurors' oath, the lack of any ameliorative language in the charge, and the speed with which the verdict was returned.

Although we find no explicit declaration of an eleven–to–one deadlock, the tenor of the messages clearly implies such a situation. The defendant, citing *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), and later cases,[2] contends that once the numerical split of the jury was revealed to the trial justice, he should not have given a supplemental charge.

In *Brasfield,* the Supreme Court ruled that a federal district judge committed reversible error when he inquired into the extent of a deadlocked jury's numerical division. *Id.* at 450, 47 S.Ct. at 136, 71 L.Ed. at 346. Here, the trial justice made no such inquiry; the jury's communications volunteered that information by implication. Substantial authority causes us to conclude that unsolicited information concerning the extent of a jury's deadlock should not preclude the court from giving an otherwise proper supplementary charge.[3]

**2.** *Mullin v. United States,* 356 F.2d 368 (D.C. Cir. 1966); *Williams v. United States,* 338 F.2d 530 (D.C. Cir. 1964); *Crowder v. United States,* 383 A.2d 336 (D.C.1978); *Jackson v. United States,* 368 A.2d 1140 (D.C.1977); *Smoot v. State,* 31 Md.App. 138, 355 A.2d 495 (1976).

**3.** The cases on which defendant rests his claim that the *Brasfield* rule is equally relevant to

volunteered knowledge of the extent of a jury's deadlock involve either different issues, *Mullin v. United States,* 356 F.2d 368 (D.C. Cir. 1966); *Crowder v. United States,* 383 A.2d 336 (D.C. 1978), or additional circumstances which cumulatively resulted in a finding of coercion. *Williams v. United States,* 338 F.2d 530 (D.C. Cir. 1964); *Jackson v. United States,* 368 A.2d 1140 (D.C.1977); *Smoot v. State,* 31 Md.App.

See, e. g., *United States v. Jennings*, 471 F.2d 1310, 1313–14 (2d Cir.), *cert. denied*, 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed.2d 395 (1973); *Sanders v. United States*, 415 F.2d 621, 631–32 (5th Cir. 1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970); *United States v. Meyers*, 410 F.2d 693, 697 (2d Cir.), *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 86, *rehearing denied*, 396 U.S. 949, 90 S.Ct. 371, 24 L.Ed.2d 255 (1969). Thus, disclosure of the jury's numerical split is only one factor to be considered in the totality of the circumstances. *See Williams v. United States*, 338 F.2d 530 (D.C. Cir. 1964); *Jackson v. United States*, 368 A.2d 1140 (D.C.1977).

■ As we view the trial justice's supplementary instruction in the context of the messages to which it was a response, we conclude that defendant's reliance on *Allen* and its progeny is misplaced. Those cases signify courts' concerns that jurors should not be coerced into yielding their honest convictions merely to return a verdict. In this case, the messages relayed to the trial justice raise a quite different concern, for they informed the trial justice that a juror was drawing on his outside experiences and was letting them affect his judgment. We reject defendant's contention that the juror, by drawing on his experiences of arrest and incarceration at the Adult Correctional Institutions, was doing nothing more than the trial justice had instructed him to do. It is true, as defendant argues, that the trial justice had instructed the jury to use their own experience, reason, and common sense in weighing the value of the evidence. We are unable to discern, however, upon reviewing the record, how a juror's experiences of arrest and incarceration have any relevance to weighing the value of the evidence presented.

■ Under the circumstances, we apply the rule that to premise prejudicial misconduct on remarks made by a trial justice, the remarks must be of such a character that they reasonably must be held to impair the impartiality of the trial. *State v. Kieon*, 93 R.I. 290, 298, 175 A.2d 284, 289 (1961). Far from impairing the impartiality of the trial, the trial justice's response to the jury's messages sought only to ensure that all jurors weighed the evidence impartially without drawing on irrelevant outside influences that may have prejudiced their judgment. Moreover, his instruction left room for any honest doubts remaining upon an impartial view of the evidence. Under the circumstances, we conclude that the trial justice, faced with the particular messages he had received from the jury, did not abuse his discretion in issuing the supplementary instruction given.

The defendant's appeal is denied and dismissed, the judgments appealed from are sustained, and the case is remanded to the Superior Court.

DORIS, J., did not participate.

138, 355 A.2d 495 (1976). *See also, United States v. Diggs*, 522 F.2d 1310, 1322 (D.C. Cir. 1975).

We therefore need not consider the "sharp division of authority" on the question of whether the Supreme Court's ruling in *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926) is a rule of constitutional interpretation, and therefore applicable to the states by authority of the Fourteenth Amendment to the United States Constitution. Some courts have held in the negative, viewing the *Brasfield* rule as one of judicial administration based on the Supreme Court's supervisory powers over the federal court system. *E. g., Ellis v. Reed*, 596 F.2d 1195, 1197 (4th Cir. 1979), *cert. de-*

nied, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979); *State v. Cornell*, 266 N.W.2d 15, 19 (Iowa 1978), *cert. denied*, 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Other courts have adopted *Brasfield* as a constitutional rule. *People v. Wilson*, 390 Mich. 689, 213 N.W.2d 193 (1973); *State v. Aragon*, 89 N.M. 91, 547 P.2d 574 (Ct.App.1976). Those courts that do not view *Brasfield* as a constitutional mandate look to the totality of the circumstances to determine whether inquiry into the numerical division of the jury was reversible error. *State v. Cornell, supra; see Ellis v. Reed, supra* at 1200; *Lowe v. People*, 175 Colo. 491, 488 P.2d 559 (1971).