**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Gaston BOUQUETT,
Defendant-Appellant.**

No. 86–3686.

United States Court of Appeals,
Sixth Circuit.

Argued March 24, 1987.

Decided June 1, 1987.

---

Before KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.

KEITH, Circuit Judge.

Defendant-appellant, Gaston Bouquett, appeals his jury conviction of conspiracy to possess with intent to distribute and to distribute dilaudid in violation of 21 U.S.C. §§ 841(a) and 846. The indictment charged defendant with conspiring from "about 1972" until "about May 1981" with "other persons, some of whose identities are unknown" to distribute dilaudid.[1] The Honorable Walter H. Rice, United States District Court for the Southern District of Ohio, sentenced defendant to five years in prison and fined him $10,000 plus the cost of his prosecution. We affirm defendant's conviction because, contrary to his assertions: 1) he was furnished sufficient notice of the charge against him to enable him to prepare for trial and 2) the trial court's instructions to the jury did not invite the jury to convict impermissibly defendant under alternative theories of guilt.

**I.**

The defendant was an ophthalmologist in Dayton, Ohio. In late 1979 or early 1980, defendant contacted pharmacist Ruben Bell to arrange an after hours meeting at Bell's Pharmacy. At this meeting, defendant asked Bell if he sold dilaudid.[2] After telling defendant that he did not sell dilaudid at the time, Bell told defendant that he would order it for him. Defendant thus asked Bell to call him when the dilaudid arrived and that he would write a prescription for it.

After placing an order for dilaudid, Bell called defendant. Later that evening, defendant paid Bell $126.00 in cash for two prescriptions of 50 tablets. A few weeks later, defendant told Bell there was a possi-

James R. Willis (argued) Cleveland, Ohio, for defendant-appellant.

D. Michael Crites, Asst. U.S. Atty., Dayton, Ohio, Robert A. Behlen, Jr. (argued), Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

1. The defendant moved for a bill of particulars seeking, *inter alia*, the identity of all the conspirators known to the government. Although the court granted the motion, the government disclosed no names other than Ruben Bell. Mr. Bell was a pharmacist whose identity was already known to the defendant.

2. Dilaudid is a Schedule II controlled substance. It comes in one, two, three and four milligram tablets. No. 4 dilaudid (four milligram tablet form) is six or seven times as potent as morphine. It is used for moderate to severe pain, including pain associated with cancer, surgery and heart attacks. The record indicates that defendant distributed No. 4 dilaudid.

bility that Bell could make a profit if he continued to order dilaudid for defendant.

At trial, Bell testified, pursuant to a plea agreement,[3] that defendant paid him $800 to $900 every two weeks for two hundred dilaudid tablets. Bell stated that the defendant wrote prescriptions in the names of existing patients for tablets which they did not receive. In order to forge the prescriptions, defendant brought a prescription pad, patient records, a calendar, and different color pens to Bell's Pharmacy after hours. The defendant assured him that they would not be caught. Bell's testimony provided the only direct evidence of conspiracy.

The government introduced circumstantial evidence to corroborate Bell's testimony about his conspiracy with defendant from late 1979 through early 1981. Specifically, the government introduced 42 prescriptions for dilaudid, most of which were filled at Bell's Pharmacy. The prescriptions were written during the relevant 1979–1981 time frame by defendant. The government also produced several of the defendant's elderly patients whose names were on these prescriptions. The patients testified that they had never received the dilaudids specified in the prescriptions bearing their name. Other elderly patients testified that they had never received the quantity of dilaudids specified in the prescriptions. Furthermore, several of the patients testified that on the occasions when defendant wrote them prescriptions for dilaudid, they were urged by defendant to fill those prescriptions at Bell's Pharmacy.

The government also produced circumstantial evidence which impeached defendant's credibility. During the execution of a search warrant in 1981, defendant talked to an investigator from the Ohio State Medical Board, Mr. Charles Young. Mr. Young testified that defendant told him that he did not dispense dilaudids from his office. A report from St. Elizabeth's Hospital's security officer indicated that defendant had reported the theft of his medical bag from his car in April of 1980. Although defendant indicated to the security officer that the stolen bag contained two to three hundred dilaudids, he told Mr. Young that the stolen bag contained 500 dilaudids.

Finally, Drug Enforcement Agent Gerald Kopp also provided circumstantial evidence of a conspiracy. Agent Kopp testified that he had investigated approximately 150 situations concerning arrangements between doctors and pharmacists to divert drugs, thus qualifying him as a "diversion expert". He testified that since the "average prescription" for dilaudids was usually 20 to 30 pills, a prescription written for more than 30 pills was an indication that the prescription could have been written for an illegitimate purpose. Agent Kopp stated that two prescriptions which were written on the same day by the same doctor for the same patient, but which were filled at two different pharmacies could lead to an inference of drug "diversion". After enumerating other types of circumstances which could lead to an inference of drug "diversion", Agent Kopp testified that the characteristics of the prescriptions introduced at trial could support the inference that defendant and Ruben Bell engaged in drug "diversion".

## II.

Defendant first argues on appeal that he was not afforded due process because he was required to go to trial not knowing the exact nature of the charge. The government, defendant asserts, did not identify what persons were involved in the conspiracy, apart from its primary witness Ruben Bell.[4] We disagree. Defendant had sufficient notice of the charge against him and

---

**3.** Ruben Bell, who was charged in a 36–count indictment for drug-related offenses, entered a guilty plea on December 17, 1985 to ten of the counts for violations of 21 U.S.C. §§ 841(a)(1), 842(a)(5) and 846.

**4.** Specifically, defendant argues on appeal that he was not given sufficient notice of the charges against him in that the government did not identify at trial more than one individual with whom the defendant conspired to sell dilaudids. He contends that the indictment charged that he conspired with other persons as well, but that the proof at trial identified only one of his co-conspirators.

his co-conspirator was identified before trial.

Generally, the government is required to prove an agreement between the defendant and at least one other person as an absolute prerequisite to obtain a conspiracy conviction. *United States v. Pennell,* 737 F.2d 521, 536 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). We believe the government met that burden with Bell's testimony, therefore it is irrelevant whether other conspirators were involved as well. Furthermore, the record indicates that defendant knew the nature of the offense with which he was charged and that he prepared his defense accordingly.

■ Defendant's argument that a variance existed between the indictment and the offense for which the defendant was convicted is without merit. A variance occurs when the charging terms of the indictment are left unaltered but the evidence offered at trial proves materially different from those alleged in the indictment. *United States v. Mahar,* 801 F.2d 1477, 1503 (6th Cir.1986). Variances will not result in reversal unless the "substantial rights" of the defendant have been affected. *United States v. Hathaway,* 798 F.2d 902, 911 (6th Cir.1986). Substantial rights are affected only when a defendant proves prejudice to his ability to defend himself, to the overall fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions. *Id.* Finally, the burden of proof rests upon the defendant to prove that the variance is fatal. *United States v. Miller,* 471 U.S. 130, 138 n. 5, 105 S.Ct. 1811, 1816 n. 5, 85 L.Ed.2d 99 (1985).

■ In the case before us, the difference between "person" and "persons" is not a material difference in the facts. The trial court granted defendant's Motion for a Bill of Particulars insofar as it requested the identities of those "other persons, some of whose identities are unknown to the Grand Jury." The government disclosed the identity of Ruben Bell in its Response to Defendant's Motion for a Bill of Particulars and in response to defendant's discovery requests. No additional persons were identified by the government as co-conspirators before trial or at the trial. Since defendant was able to prepare his defense before trial knowing that the government alleged that Ruben Bell was his co-conspirator and since he was not surprised at trial with the disclosure of additional co-conspirators, there was no prejudice to the defendant. Consequently, defendant's failure to prove that there was a material difference in the indictment, that the indictment affected his substantial rights and that those rights were prejudiced by his ability to defend himself at trial indicate that he did not meet his burden of proof.

■ Defendant next argues that he was denied due process because the trial court invited the jury to convict him under alternative theories of guilt.[5] Again, we disagree. The government did not introduce evidence that defendant conspired with other persons. Furthermore, the evidence at trial proved that the defendant did conspire with Ruben Bell to possess with intent to distribute and to distribute dilaudid.

Defendant erroneously relies upon *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977), for the proposition that the jury was required to agree unanimously on a theory of liability as well as a finding of guilt.[6] Specifically, when the district court

---

5. Specifically, defendant contends that since the language of the indictment stated that he conspired with more than one other person and the government's proof indicated that he conspired with only one individual, that it is possible that the jury convicted him under alternative theories of guilt.

6. In *Gipson,* the defendant was charged with receiving, concealing, storing, bartering, selling and disposing of a stolen motor vehicle. In response to a question from the jury during deliberations, the court in effect told the jury it

could return a verdict of guilty even if there were disagreement among the jurors as to whether the act committed by the defendant was receiving, concealing, storing, bartering, selling or disposing of the vehicle. Defendant objected to this supplemental instruction, and following a conviction sought reversal alleging a violation of his right to a unanimous verdict. The Fifth Circuit held that the right of a defendant to a unanimous verdict was violated where the jury was permitted to convict even though there may have been significant disagreement

instructed the jury that defendant was charged with conspiring with "other persons", defendant argues that the court created two theories of liability for the jury to consider: that defendant conspired with Bell or that defendant conspired with persons other than Bell. On the latter theory, defendant states that the evidence was not sufficient to convict him, and given the jury rendered only a general verdict, it is not possible to determine which theory the jurors believed. We believe this argument is meritless.

First, the jury instructions cannot be fairly read to support defendant's contention. The trial court advised the jury of the elements of the offense, the nature of a conspiracy charge, that specific intent was required for this offense, that the government was obligated to prove the defendant's guilt beyond a reasonable doubt and that the verdict must be unanimous. Notwithstanding, even if the jury did believe that it was invited to convict the defendant under alternative theories of guilt, the remaining portion of the charge cured any error.

Second, the defendant's argument here is directed to the sufficiency of the evidence of conspiracy, not to multiple theories of liability. We therefore believe *Gipson* is not applicable because it involved two distinct conceptual groupings of prohibited acts under 18 U.S.C. § 2313 (sale or receipt of stolen vehicles).[7] In *United States v. McPherson*, 782 F.2d 66 (6th Cir.1986) (per curiam), we noted that there was an error in the trial court's instruction to the jury in *Gipson* and that the result in *Gipson* was

based on a finding that 18 U.S.C. § 2313 contained two distinct conceptual groupings of prohibited acts. However, defendant here was convicted of conspiracy to distribute a Schedule II controlled substance, dilaudid, in violation of 21 U.S.C. § 846. Furthermore, unlike *Gipson*, there was no error in the instructions to the jury. Thus, the conspiracy statute here is not analogous.

■ Third, this court does not require jurors to agree unanimously as to a theory of guilt where a single generic offense may be committed by a variety of acts. *McPherson*, 782 F.2d at 68 (per curiam). *See United States v. Acosta*, 748 F.2d 577 (11th Cir.1984). Finally, the evidence as to a conspiracy between the defendant and Bell was clearly sufficient for the defendant's conviction.

Defendant also contends that the jury instructions were erroneous in that defendant could be convicted of conspiracy even if he played a minor role and if he became a member of the conspiracy. We believe neither allegation of error is developed nor supported by any propositions of law.

Rule 30 of the Federal Rules of Criminal Procedure provides, "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Fed.R.Crim.P. 30. The trial transcript indicates that defendant made no objections at the charge conference to the instructions about which he now complains. Nor was any objection made after the in-

---

among the jurors about what the defendant did. This court has recently distinguished the *Gipson* case in *United States v. McGuire*, 744 F.2d 1197, 1202–03 (6th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985), and *United States v. McPherson*, 782 F.2d 66, 67–68 (6th Cir.1986) (per curiam).

In *McPherson*, this court concluded that the trial court did not commit plain error in failing to give an instruction requiring unanimity as to the theory of guilt. *McPherson*, 782 F.2d at 68.

**7.** The *Gipson* court reached its decision only after finding two distinct conceptual groupings under 18 U.S.C. § 2313: the first consisting of receiving, concealing and storing, and the sec-

ond comprised of bartering, selling and disposing. *Gipson*, 553 F.2d at 458. The court held that the jury must unanimously agree on "the *actus reus* element of the offense" because the prohibited acts involved in the case were conceptually distinct. *Id.* at 458. Specifically, the acts of receipt, concealment and storage are conceptually distinct from the acts of bartering, selling and disposing. *Id.* Conversely, given the district court's instruction to the jury that defendant was charged with other persons, the fact that defendant conspired with Bell or that defendant conspired with persons other than Bell, does not fall into "two conceptual groupings."

structions were read to the jury and before the jury retired. Since the defendant did not properly preserve his objection, we find that he waived any assignments of error, except plain error or defects affecting the substantial rights of the defendant. *United States v. Saussy*, 802 F.2d 849, 853 (6th Cir.1986) *cert. denied*, —— U.S. ——, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987); Fed.R. Crim.P. 30. After careful review of the record, we hold that neither of the above allegations amounts to plain error.

Accordingly, we AFFIRM the conviction of defendant Gaston Bouquett.