Gaston **BOUQUETT**, M.D., Plaintiff,

v.

**R.H. CLEMMER, et al., Defendants.**

No. C–3–82–146.

United States District Court,
S.D. Ohio, W.D.

Nov. 7, 1988.

Richard Austin, St. Croix, U.S. V.I., for plaintiff.

Bobby Joe Cox, Huber Heights, Ohio, for R.H. Clemmer & Charles E. Gentry.

R.H. Clemmer, Dayton, Ohio, pro se.

Charles Gentry, Dayton, Ohio, pro se.

William J. Steele, Asst. Atty. Gen., Columbus, Ohio, for David G. Johnson, Charles F. Young, State Bd. of Pharmacy & State Medical Bd.

Victor A. Hodge, Dayton, Ohio, for Robert Reynolds.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the Motions for Summary Judgment filed by the remaining defendants in this action, the City of Dayton, Ohio, Robert Reynolds, R.H. Clemmer, Charles E. Gentry, David G. Johnson and Charles F. Young (doc. nos. 59, 61, 63 and 65), and plaintiff's opposition thereto (doc. no. 74).

This is a civil rights action in which plaintiff seeks redress for alleged malicious prosecution. Plaintiff alleges that he was prosecuted by these defendants in Case Nos. 81–CR–928 and 81–CR–1514 in the Common Pleas Court of Montgomery County, Ohio because of his race; plaintiff is a black ophthalmologist.

The Court has reviewed the arguments made by the parties and has applied the principles of controlling law to the facts presented. The legal standard for consideration and disposition of issues on summary judgment is well settled.

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in favor of the party opposing the motion who is given the benefit of all favorable inferences that can be drawn therefrom. *United ed States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986) (original emphasis).

Summary judgment should not be granted unless it is clear that a trial is unnecessary. The threshhold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has recently stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather than as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary

judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.,* 106 S.Ct. at 2553; *Anderson,* 106 S.Ct. at 2511.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Catrett,* 106 S.Ct. at 2553. Significantly, the Supreme Court also instructs that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson,* 106 S.Ct. at 2511. Rule 56(e) requires plaintiff to go beyond the pleadings and by his own affidavits, designate "specific facts showing that there is a genuine issue for trial." *Id.*

Further, there is no express or implied requirement in Fed.R.Civ.P. 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Fed.R.Civ.P. 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories and admissions on file.

Upon review, it is uncontroverted in this record that plaintiff was prosecuted by indictment as provided by law and that the prosecuting attorney and/or his assistants proceeded with that prosecution. The prosecuting attorney is an independent elected official charged with prosecutorial responsibilities pursuant to Ohio law. Ohio Rev. Code § 309.08.

There is no evidence in this record which indicates that any defendant improperly controlled, in any fashion, the prosecution of plaintiff in either Case No. 81–CR–928 or 81–CR–1514.

Further, one defendant has unequivocally stated by affidavit that no action was premised upon plaintiff's race.

In response to defendants' Motions for Summary Judgment, plaintiff filed an affidavit dated February 9, 1987 with the following statements:

1. He is a physician in the speciality of Ophthalmology, duly licensed to practice medicine in the state of Ohio.

2. He has never written any prescriptions or prescribed any medicine that was not for the specific treatment of an actual patient. He has never been involved in the illegal distribution of dilaudid or any other drug.

3. Before May 1981, he enjoyed an excellent reputation and good name in the community and had a financially successful medical practice.

4. Due to the illegal, malicious, willful and wanton conduct of the defendants in concert with others, he has been harmed and damaged in his reputation, good name and medical practice all in violation of his federally protected rights and all because of his race.

5. There are genuine issues of material facts existing in the instant case.

6. The criminal conviction obtained against him in Federal District Court Case No. CR–3–868–01 was obtained based upon on improper [sic] and indictment [sic] on a conspiracy offense, perjured testimony and insufficient service of counsel.

7. He is presently engaged in a vigorous appeal of the said criminal conviction in the Sixth Circuit Court of Appeals and has made an application for an appeal bond.

8. He has been granted a stay of execution of sentence by the District Court until March 17, 1987.

9. He has made a diligent effort to obtain local counsel to handle this case and on each occasion counsel

declined due to the unique posture of the case.

10. He was under the mistaken impression and belief that his present counsel, Richard Austin, had or would request that the consideration of the Motion for Summary Judgment be delayed until after the criminal appeal had concluded and that a response to the motion was not due and that he did not have to obtain local counsel until after that time.

On June 1, 1987, the appeal referred to in plaintiff's affidavit was decided. *United States v. Bouquett*, 820 F.2d 165 (6th Cir. 1987); *see also, United States v. Bouquett*, 837 F.2d 1091 (6th Cir.1988). The Court's decision in that case is significant to the resolution of the issues presented by these defendants on summary judgment. The Court stated:

Defendant–Appellant, Gaston Bouquett, appeals his jury conviction of conspiracy to possess with intent to distribute and to distribute dilaudid in violation of 21 U.S.C. §§ 841(a) and 846. The indictment charged defendant with conspiring from 'about 1972' until 'about May 1981' with 'other persons, some of whose identities are unknown' to distribute dilaudid. The Honorable Walter H. Rice, United States District Court for the Southern District of Ohio, sentenced defendant to five years in prison and fined him $10,000 plus the cost of his prosecution. We affirm defendant's conviction because, contrary to his assertions: 1) he was furnished sufficient notice of the charge against him to enable him to prepare for trial and 2) the trial court's instructions to the jury did not invite the jury to convict impermissibly defendant under alternative theories of guilt.

The defendant was an ophthalmologist in Dayton, Ohio. In late 1979 or early 1980, defendant contacted pharmacist Ruben Bell to arrange an after hours meeting at Bell's Pharmacy. At this meeting, defendant asked Bell if he sold dilaudid. After telling defendant that he did not sell dilaudid at the time, Bell told defendant that he would order it for him. Defendant thus asked Bell to call him when the dilaudid arrived and that he would write a prescription for it.

After placing an order for dilaudid, Bell called defendant. Later that evening, defendant paid Bell $126.00 in cash for two prescriptions of 50 tablets. A few weeks later, defendant told Bell there was a possibility that Bell could make a profit if he continued to order dilaudid for defendant.

At trial, Bell testified, pursuant to a plea agreement, that defendant paid him $800 to $900 every two weeks for two hundred dilaudid tablets. Bell stated that the defendant wrote prescriptions in the names of existing patients for tablets which they did not receive. In order to forge the prescriptions, defendant brought a prescription pad, patient records, a calendar, and different color pens to Bell's Pharmacy after hours. The defendant assured him that they would not be caught. Bell's testimony provided the only direct evidence of conspiracy.

The government introduced circumstantial evidence to corroborate Bell's testimony about his conspiracy with defendant from late 1979 through early 1981. Specifically, the government introduced 42 prescriptions for dilaudid, most of which were filled at Bell's Pharmacy. The prescriptions were written during the relevant 1979–1981 time frame by defendant. The government also produced several of the defendant's elderly patients whose names were on these prescriptions. The patients testified that they had never received the dilaudids specified in the prescriptions bearing their name. Other elderly patients testified that they had never received the quantity of dilaudids specified in the prescriptions. Furthermore, several of the patients testified that on the occasions when defendant wrote them prescriptions for dilaudid, they were urged by defendant to fill those prescriptions at Bell's Pharmacy.

The government also produced circumstantial evidence which impeached de-

fendant's credibility. During the execution of a search warrant in 1981, defendant talked to an investigator from the Ohio State Medical Board, Mr. Charles Young. Mr. Young testified that defendant told him that he did not dispense dilaudids from his office. A report from St. Elizabeth's Hospital's security officer indicated that defendant had reported the theft of his medical bag from his car in April of 1980. Although defendant indicated to the security officer that the stolen bag contained two to three hundred dilaudids, he told Mr. Young that the stolen bag contained 500 dilaudids.

Finally, Drug Enforcement Agent Gerald Kopp also provided circumstantial evidence of a conspiracy. Agent Kopp testified that he had investigated approximately 150 situations concerning arrangements between doctors and pharmacists to divert drugs, thus qualifying him as a 'diversion expert'. He testified that since the 'average prescription' for dilaudids was usually 20 to 30 pills, a prescription written for more than 30 pills was an indication that the prescription could have been written for an illegitimate purpose. Agent Kopp stated that two prescriptions which were written on the same day by the same doctor for the same patient, but which were filled at two different pharmacies could lead to an inference of drug 'diversion'. After enumerating other types of circumstances which could lead to an inference of drug 'diversion', Agent Kopp testified that the characteristics of the prescriptions introduced at trial could support the inference that defendant and Ruben Bell engaged in drug 'diversion'. (footnotes omitted).

*Bouquett,* 820 F.2d at 166–167.

Over a year has passed since plaintiff's appeal was decided by the Court of Appeals. Plaintiff has made no further response to the Motions for Summary Judgment, nor has he obtained local counsel.

█ Further, the statements numbered 6 through 10 in plaintiff's affidavit are not relevant to the resolution of the issue presented to this Court on summary judgment; the statement numbered 5 in plaintiff's affidavit is conclusory and is also not relevant to the resolution of these issues; the statements in number 2 have been judicially determined to be false.

█ It has also been judicially determined that plaintiff's enjoyment of an excellent reputation and good name in the community prior to May, 1981, was based on incomplete information. While plaintiff is a physician in the specialty of ophthalmology duly licensed to practice medicine in the State of Ohio, and while he had a financially successful medical practice, it has been judicially determined that he violated federal law, 21 U.S.C. §§ 841(a) and 846, and plaintiff has been sentenced for those crimes. Therefore, the statement numbered 3 in plaintiff's affidavit is not relevant in light of the subsequent events.

█ The statement numbered 4 in plaintiff's affidavit that he suffered a deprivation of his federally protected rights due to the illegal, malicious, willful and wanton conduct of the defendants is conclusory and is not a statement of fact for this Court's consideration.

█ The record before the Court on summary judgment establishes that plaintiff was not prosecuted by any named defendant, but rather by the prosecuting attorney of Montgomery County, Ohio, who prosecuted this case independent of the other named defendants; that the named defendants were performing their respective duties in good faith; that plaintiff was prosecuted because of his activities and not because of his race; and that the named defendants did not deprive plaintiff of any federal right by any conduct which could be considered to be outrageous or to be the arbitrary use of government power. *See, Jones v. Sherrill,* 827 F.2d 1102 (6th Cir. 1987).

Plaintiff has been afforded a reasonable period of time to present to this Court his arguments against the factual account and legal reasoning of the defendants in their Motions for Summary Judgment, and to obtain local counsel after his conviction was affirmed.

Based upon the foregoing, and in viewing the evidence and all favorable inferences that can be drawn therefrom in favor of plaintiff, the Court finds that there is no genuine issue as to any material fact in this matter and that defendants are entitled to judgment as a matter of law.

Accordingly, defendants' Motions for Summary Judgment (doc. nos. 59, 61, 63 and 65) are hereby GRANTED, judgment is entered in favor of all remaining defendants against plaintiff, and this case is DISMISSED on its merits.

IT IS SO ORDERED.