892 F.2d 80
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy B. McCARTY, Defendant-Appellant.
 No. 89-5065.
 United States Court of Appeals, Sixth Circuit.
 Dec. 18, 1989.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and LIVELY, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 In the fall of 1968, Michael R. Jarnigan was charged in a four-count indictment with conspiracy to commit mail fraud and three separate mail fraud counts. He faced a potential serious sentence. Rather than go to trial, Jarnigan entered into a plea agreement with the United States providing for a maximum sentence of two years in jail, and he was placed on probation for three years. He agreed to cooperate with regard to all inquiries made of him regarding the matters set forth in the indictment. Thereafter, Jarnigan became a paid informer for the Federal Bureau of Investigation (FBI) in Knoxville, Tennessee, and he received $8600 during the several months preceding the arrest of Timothy B. McCarty, defendant herein.
 
 
 2
 Jarnigan met McCarty in April 1987 while the former was on federal probation. The two continued to meet socially at the homes of friends until on or about December 18, 1987, when McCarty was arrested on drug offenses. Jarnigan had met the defendant at a public park in Fountain City, a suburb of Knoxville, several weeks before the arrest, for the alleged purpose of purchasing an ounce of cocaine. Prior to the meeting, Jarnigan was equipped with a recording device by the FBI and received the cash to make a purchase of cocaine. The discussions that occurred during this meeting were recorded, transcribed, and introduced into evidence at McCarty's trial, and this meeting was surveilled by the FBI. Defendant told Jarnigan that he wished to meet him at a remote location where they could complete the transaction. Jarnigan attempted to persuade the defendant to complete the transaction at the park, but the defendant wanted to take the money from Jarnigan and then make other delivery arrangements. Jarnigan was instructed not to give McCarty the money without first receiving the cocaine.
 
 
 3
 Ultimately, they left the park together and traveled to a remote location selected by the defendant. The defendant then instructed Jarnigan to wait there while he went to get the cocaine. The defendant returned shortly thereafter and tossed an envelope containing a package of cocaine into Jarnigan's waiting car. Jarnigan testified that he had paid McCarty $2200 for the cocaine. Jarnigan delivered the cocaine, consisting of 27.8 grams of 82% pure cocaine, and turned it over to the FBI.
 
 
 4
 A week later, Jarnigan again met the defendant at Rifle Range Road so that Jarnigan could purchase another ounce of cocaine for $2200. Jarnigan and his car were searched before the meeting, and again Jarnigan was provided with a tape recorder to record the conversation. This meeting was surveilled by law enforcement agents from an aircraft. During their meeting, Jarnigan paid the defendant $2200 in cash for a package of cocaine consisting of 27.9 grams of 70% pure cocaine.
 
 
 5
 During the latter transaction, Jarnigan asked the defendant if he could purchase more than one ounce of cocaine for an associate, and the defendant indicated that they could talk about it later. Defendant then called Jarnigan and asked if his friend liked the cocaine which had just been delivered that day, according to Jarnigan's testimony.
 
 
 6
 A week later, the defendant called Jarnigan, in an unrecorded conversation, and indicated that he could provide him with 14 ounces of cocaine. Jarnigan then contacted the FBI and then called McCarty from the FBI office. The defendant confirmed that he had fourteen ounces of cocaine which he could sell for $18,000. In a few days, the defendant called Jarnigan and stated that "the only thing I can do is 10 for 15," which Jarnigan testified meant ten ounces of cocaine for $15,000.
 
 
 7
 That afternoon, the defendant arrived at Jarnigan's hotel room to complete the transaction discussed, indicating that the quantity had been reduced from fourteen to ten ounces because of the source's limited supply. The defendant also explained that the person who was supplying the ten ounces of cocaine would not be willing to supply it without first receiving the money.
 
 
 8
 FBI Agent Currie was present in an undercover capacity, pretending to be the person for whom Jarnigan was obtaining the cocaine. Defendant was then arrested and a loaded revolver was seized from the front waist band of the his trousers. A knife was seized from the front seat of McCarty's automobile, the blade of which, on analysis, contained cocaine powder.
 
 
 9
 McCarty testified at trial that a few days after meeting Jarnigan, he saw Jarnigan and his friends shooting cocaine. The defendant also testified that he first began using and acquiring cocaine from Jarnigan shortly thereafter and later became addicted. McCarty testified that he got a quarter of a gram to a gram of cocaine from Jarnigan in each transaction. Defendant claimed that he never sold cocaine to anyone except to Jarnigan.
 
 
 10
 RaNonda Sherod, a defense witness, testified that she knew Jarnigan, that she had seen Jarnigan use cocaine in 1987, and that Jarnigan had furnished her cocaine during a three to four month stretch in the fall of 1987. Justin Nichols, RaNonda Sherod's son, testified that he had seen Jarnigan at his mother's home weighing and bagging cocaine. (Justin also testified that his mother had let him use marijuana since he was fifteen years old). Justin's brother, Joshua Nichols, who was fifteen years old, testified to the same effect and that Jarnigan showed him how to weigh and purify cocaine.
 
 
 11
 Jeff Holbert also testified that Jarnigan had given him cocaine and used it in front of him. Tinnel Stair, another defense witness, testified that she had been a friend of the McCarty family for years; that the defendant's reputation was one of truthfulness, but that Jarnigan had a bad reputation for truthfulness.
 
 
 12
 In rebuttal, Denise McCoy, a nursing student, testified that she had known the defendant for four years and that she had obtained cocaine from McCarty approximately six times during a six month time span prior to April 1987. McCoy further testified that she had seen the defendant supply cocaine on numerous occasions in April 1987 to others, including Sherod, Holbert, Jeff Carmen, David Jesse, Susie Smith, and Brenda McFarland.
 
 
 13
 McCoy testified that she was introduced to McCarty by Jeff Holbert for the purpose of obtaining cocaine, and that she had introduced Jarnigan to the defendant. McCoy testified that she had seen the defendant selling cocaine both before and after she introduced him to Jarnigan. After learning that Jarnigan was working as an informant for the FBI and that McCarty was arrested, Jeff Holbert came to McCoy's house and told her that if he ever saw Jarnigan, he would kill him.
 
 HISTORY
 
 14
 In addition to the drug charges, the defendant was also charged with knowingly and intentionally using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). A jury returned a verdict convicting the defendant on all six counts in the indictment. This appeal followed, and we affirm.
 
 
 15
 1. Sufficiency of the Evidence on Drug Offenses
 
 
 16
 The defendant argues that the district court erred in denying his motion for judgment of acquittal, which he made at the close of the government's case but not at the conclusion of all the evidence.
 
 
 17
 Absent a manifest miscarriage of justice, a district court's denial of a Rule 29 motion for judgment of acquittal is not reviewable on appeal in the absence of a renewed motion at the close of all the evidence. United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984); United States v. Van Dyke, 605 F.2d 220 (6th Cir.), cert. denied, 444 U.S. 994 (1979).
 
 
 18
 Even if we were to review the sufficiency of the evidence supporting the conviction for conspiring to distribute and to possess with the intent to distribute cocaine, there clearly was sufficient evidence to support the conviction under the standard announced in Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 19
 2. Overruling Acquittal Motion in Jury's Presence
 
 
 20
 The defendant argues that the district court's denial of his Rule 29 motion for acquittal in the presence of the jury was plain error. We do not condone ruling on such a motion in the presence of the jury. The obvious danger inherent in a perfunctory denial of an acquittal motion in open court is that the jury may believe the trial judge is expressing his opinion on defendant's guilt. See United States v. Diharce-Estrada, 526 F.2d 637 (5th Cir.1976). Such action, although disapproved, brings about reversal only upon a showing of prejudice coupled with other aggravating factors. See Diharce-Estrada, 526 F.2d at 641. We take into account that defendant's counsel initiated the discussion and initiated the circumstances leading to the open court denial.
 
 
 21
 The defense counsel and not the district court generated everything with respect to the motion in the presence of the jury. We, therefore, conclude that the district court committed no plain or reversible error. See 526 F.2d at 641; United States v. Anderson, 471 F.2d 201, 204 (5th Cir.1973).
 
 3. Impartiality of Trial Judge
 
 22
 The defendant asserts that the district judge improperly intervened during the trial in a way that prejudiced the defendant's right to a fair trial. In United States v. Hickman, 592 F.2d 931 (6th Cir.1979), this court stated that "great care must be taken by a judge to 'always be calmly judicial, dispassionate and impartial. He should sedulously avoid all appearances of advocacy as to those questions which are ultimately to be submitted to the jury.' " Id. at 933 (quoting Frantz v. United States, 62 F.2d 737, 739 (6th Cir.1933)). On the other hand,
 
 
 23
 [t]he trial judge in the federal court is more than a mere arbitrator to rule upon objections and to instruct the jury. It is his function to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties. It is his duty to see that the issues are not obscured and that the testimony is not misunderstood. He has the right to interrogate witnesses for this purpose.
 
 
 24
 Hickman, 592 F.2d at 933 (quoting United States v. Carabbia, 381 F.2d 133, 139 (6th Cir.1967)).
 
 
 25
 We conclude, upon examination of the record, that defendant has not shown that the trial judge improperly intruded into the trial nor demonstrated partiality. It is true that at times the district court revealed some irritation with counsel and witnesses for both sides. We find under the circumstances, however, no prejudice to either side. Defendant's counsel had a full opportunity to cross examine the government's witnesses and to present his defense. The record simply does not show unfair prejudice in the actions of the district court, which also instructed the jury at the close of the case that its comments to the lawyers and witnesses should not be interpreted as an opinion on the issues.
 
 4. Evidence of Homosexual Relationship
 
 26
 McCarty's next and most serious claim is that the district court committed reversible error in allowing evidence of a homosexual relationship between two of the defendant's witnesses. Jeff Holbert testified on McCarty's behalf. Denise McCoy was called by the government in rebuttal. Near the end of her direct examination, the following exchange occurred:
 
 
 27
 Q. Now, David Jesse and Jeff Holbert, is there any relation or association between the two of them?
 
 
 28
 A. Yes, sir, there is.
 
 
 29
 Q. What is that?
 
 
 30
 A. They are gay.
 
 
 31
 Q. Are they together?
 
 
 32
 A. Yes.
 
 
 33
 EDWARDS [counsel for defendant]: Your Honor, I don't know what relevance this has. It is just inflammatory.
 
 
 34
 COURT: What was the question?
 
 
 35
 WINCK [government attorney]: The association between David Jesse and Jeff Holbert both people which she's identified as receiving cocaine from his man.
 
 
 36
 COURT: Overruled.
 
 
 37
 Later, the government cross examined Jesse concerning his relationship with Holbert:
 
 
 38
 Q. How long have you known Jeff Holbert?
 
 
 39
 A. Approximately the same time.
 
 
 40
 Q. Do you see him in the courtroom?
 
 
 41
 A. Yes, sir.
 
 
 42
 Q. Would you identify him?
 
 
 43
 A. Mr. Holbert?
 
 
 44
 Q. Yes, sir.
 
 
 45
 A. Right there with the pink shirt.
 
 
 46
 Q. Have you ever lived with him?
 
 
 47
 A. Excuse me?
 
 
 48
 Q. There have you ever lived with him, Mr. Holbert?
 
 
 49
 A. For only a brief month.
 
 
 50
 Q. Have you ever dated him, Jeff Holbert?
 
 
 51
 A. How do you mean dated, sir?
 
 
 52
 EDWARDS: Your Honor, again, I fail to see any relevance to this question.
 
 
 53
 WINCK: I am offering this for prejudice and bias and interest in the outcome of this case.
 
 
 54
 EDWARDS: Any relationship between this man and Mr. Holbert first of all I don't think it's true. Second of all, there's no relationship to this witness.
 
 
 55
 COURT: Sustained. You may come down. Call your next. Anything else?
 
 
 56
 The trial judge should have considered whether the probative value of such evidence was outweighed by the potentiality of undue prejudice to the defendant. We find reversible error on an evidentiary matter only upon a showing of a grave abuse of discretion and serious prejudice. United States v. Jenkins, 525 F.2d 819, 824 (6th Cir.1975). While we believe it was a mistake for the district judge to allow this evidence of homosexuality to be elicited in front of the jury, and there should have been a corrective instruction, we find the error to be harmless beyond a reasonable doubt. Even if the purpose of this inquiry was to show the relationship among the various drug customers of McCarty to demonstrate mutual interest and bias in the outcome of the case, we find the prejudicial effect outweighs the probative value.
 
 
 57
 Holbert and Jesse were testifying on the collateral issue of whether Jarnigan was a user and a supplier of cocaine at the pertinent time. The government never denied this contention, and Jarnigan was never presented as a model citizen. The facts in this case are not nearly as serious as those presented in United States v. McFadyen-Snider, 552 F.2d 1178 (6th Cir.1977). We find that the error in this regard was harmless in light of the overwhelming evidence against the defendant and the fact that the testimony of Holbert and Jesse bore upon collateral issues only.
 
 5. Jury Instruction on Reasonable Doubt
 
 58
 The defendant's next assignment error is that the district court erred in instructing the jury that a reasonable doubt is a "real" doubt. The district court instructed the jury as follows:
 
 
 59
 Now, reasonable doubt is a real doubt based upon reason and common sense after a careful and impartial consideration of all the evidence in the case.
 
 
 60
 McCarty argues that this definition was "manifestly prejudicial." Similar or identical instructions, however, have been upheld in many cases, including Payne v. Smith, 667 F.2d 541 (6th Cir.1981), cert. denied, 456 U.S. 932 (1982); United States v. Newport, 747 F.2d 1307, 1308-09 (9th Cir.1984); and United States v. Alonzo, 681 F.2d 997, 1002 (5th Cir.), cert. denied, 459 U.S. 1021 (1982). The district court did not commit error in its reasonable doubt instruction to the jury.
 
 6. Good Character Evidence Instruction
 
 61
 The defendant claims that the district court committed reversible error by failing to instruct the jury that evidence of McCarty's good character alone may create a reasonable doubt. Defendant, however, submitted no such instruction or objected to the absence of such an instruction during the course of the trial. Rule 30 of the Federal Rules of Criminal Procedure provides in part:
 
 
 62
 No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.
 
 
 63
 The defendant has waived his right to object on this point. See United States v. Bouquett, 820 F.2d 165, 169-70 (6th Cir.1987).
 
 
 64
 7. Cautionary Instruction Regarding Informant
 
 
 65
 McCarty contends that even though he did not request at trial an instruction charging the jury to view with caution the testimony of the informant Jarnigan, the district judge committed plain error by failing to issue such a charge. By virtue of his failure to request an informant instruction or to object to the absence of such an instruction, the defendant has again waived any assertion of error in this regard unless the district court's failure to give such an instruction constitutes plain error. The defendant relies on the case of United States v. Griffin, 382 F.2d 823, 829 (6th Cir.1967), in which the court held that the failure of the district court to give sua sponte an instruction to the jury to weigh the testimony of the addicted informant with caution constituted plain error. The court was careful, however, to note in Griffin that it was not establishing a per se rule. Id. at 829 n. 10.
 
 
 66
 The court did give the following instruction:
 
 
 67
 Now, there's nothing improper about calling, as a witness, a person who was using or addicted to drugs at the time he or she observed the events at issue and who is now using drugs. However, that witness' testimony must be examined with greater scrutiny than the testimony of any other witness.
 
 
 68
 The testimony of a witness who is using drugs at the time of the events he's testifying about or who is using drugs at the time of his testimony may be less believable because of the affect drugs may have on his ability to perceive or relate the events in question.
 
 
 69
 The government in its opening statement, moreover, explained to the jury that the informant Jarnigan had been convicted of a felony conspiracy charge and received monies from working as an informant, and warned that the jurors should weigh his testimony cautiously. Significantly, there was also substantial corroboration to the informant's testimony implicating McCarty in this case. See United States v. Vinson, 606 F.2d 149, 154 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980). We find no plain error in the circumstances.
 
 8. Directed Verdict of Guilt
 
 70
 The defendant contends that the district court, in its charge to the jury on entrapment, improperly directed the jury to return a verdict of guilty with respect to the following challenged instruction:
 
 
 71
 If you find under the facts of this case that Mr. McCarty had no prior intent or predisposition to commit the offenses charged and that he was induced or persuaded to do them by law enforcement officers or their agents, then you must find that he was entrapped and you must find him not guilty. On the other hand, if you find that he had a prior intent or predisposition to commit the offenses charged, then he was not entrapped even though the law enforcement officers or their agents provided a favorable opportunity to commit the offenses, made committing the offenses easier or even participated in action essential to the offenses. If he was not entrapped, then you must find him guilty as charged.
 
 
 72
 The defendant here is emphasizing only a portion of the district court's instruction and taking it out of context. The instructions must be viewed in their entirety. The district court repeatedly instructed the jury throughout that the government had the burden of proving each element of its case beyond a reasonable doubt, including the following instruction:
 
 
 73
 You must follow all of my instructions as a whole. You have no right to disregard or give special attention to any one instruction or to question the wisdom or correctness of any rule that I may state to you.
 
 
 74
 The record reflects that the essential elements of each charge contained in the indictment were conveyed to the jury and it was made clear that the government had to prove each of these elements beyond a reasonable doubt before the defendant could be convicted. No objection to this instruction was made by the defendant at trial. We do not find plain error, although the particular sentence pointed to by defendant is not approved as a satisfactory instruction.
 
 
 75
 9. Sufficiency of the Evidence on Telephone, Attempt, and Facilitation Counts
 
 
 76
 As stated in our discussion of the defendant's first ground of error, defendant has waived any challenge to the sufficiency of the evidence since he failed to renew his motion for judgment of acquittal at the close of all the evidence in the case. If the court were to review the sufficiency of the evidence in respect to the communication counts, the record would demonstrate again that the evidence was clearly sufficient to support the convictions for the knowing or intentional use of a communication facility to facilitate the commission of a drug offense under 21 U.S.C. §§ 801-966. See United States v. McGhee, 854 F.2d 905, 908 (6th Cir.1988), and United States v. Burns, 681 F.2d 717, 724 (11th Cir.1982).
 
 
 77
 The essential elements necessary to support a conviction for attempt are an intent to engage in criminal conduct constituting a "substantial step" toward the commission of the substantive offense. United States v. Dworken, 855 F.2d 12, 17 (1st Cir.1988). The evidence is sufficient that the defendant demonstrated an intent to engage in criminal conduct to distribute cocaine as set forth in the tapes, and there is other evidence, if believed by the jury, of defendant's efforts to make arrangements with his source to have ten ounces of cocaine. We find this contention meritless.
 
 
 78
 10. Sufficiency of the Evidence on Firearm Charge
 
 
 79
 Again, having failed to renew his motion for judgment of acquittal at the close of all the evidence in the case, the defendant has waived any challenge to the sufficiency of the evidence on appeal as to his conviction on the firearm count. The government established by adequate proof that the defendant was guilty of conspiring to distribute and to possess with the intent to distribute cocaine and the crime of attempt to distribute cocaine. The crime in this count was complete when the defendant entered the hotel room, at the time of arrest, while carrying the loaded .38 caliber pistol tucked in his belt. The defendant was carrying the firearm during and in relation to a drug trafficking offense. This assignment of error is similarly without merit.
 
 
 80
 For the reasons set forth above, we AFFIRM the convictions.