895 F.2d 1415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobbie Frank ANDREWS, also known as "Cotton" Andrews,
Defendant-Appellant.
 No. 89-5225.
 United States Court of Appeals, Sixth Circuit.
 Feb. 14, 1990.
 
 Before BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Bobbie Frank "Cotton" Andrews appeals his cocaine conviction, arguing that his trial was fraught with error and that he was sentenced improperly. We affirm the conviction, but vacate the sentence and remand for resentencing.
 
 
 2
 Andrews was arrested for selling cocaine to a paid government informant, Larry Layne, while Andrews was a patient in the hospital. Layne had first met Andrews in early 1988. About the same time, Layne had agreed to become an undercover informant for the Federal Bureau of Investigation. On May 20, 1988, Layne purchased approximately one ounce of cocaine from Andrews for $1,750.
 
 
 3
 At trial, Layne testified that Andrews had told him during the spring of 1988 that he could get 85% pure cocaine for him the following day, but did not. Later, on May 17, 1988, Layne visited Andrews in the hospital in order to purchase cocaine. Layne wore a tape recorder. The defendant indicated that he had found some sources for cocaine, but that the purity was only 50 to 60 percent. On May 20, 1988, Layne had two taped telephone conversations with the defendant. Layne asked if Andrews could get him any cocaine, and Andrews replied that he might be able to get some. On a second visit that day, Andrews told Layne that he would sell him approximately one ounce of cocaine for $1,725. Layne left the hospital, and met with FBI agents, who gave him $1,800. Layne returned to the hospital and purchased the cocaine from Andrews, paying him $1,700 at the time with $25 to be paid later.
 
 
 4
 As a result of this transaction, Andrews was indicted on September 8, 1988 for three counts of conspiracy to distribute cocaine, distributing cocaine, and using a telephone to facilitate the distribution. After a two day jury trial, Andrews was convicted on all three counts on November 17, 1988. On February 14, 1989, Andrews was given concurrent sentences of 80 months on the distribution counts and 48 months on the telephone count. The district court also sentenced Andrews to pay a special assessment of $150.00.
 
 
 5
 On appeal, Andrews argues: (1) that the government engaged in outrageous conduct; (2) that the district court erred in refusing to compel a fuller response to his bill of particulars; (3) that the district erred in instructing the jury; and (4) that the district court improperly sentenced him.
 
 I. Outrageous Conduct
 
 6
 Andrews argues that the government, by employing Layne as an undercover agent, entrapped him in a manner so outrageous as to constitute a violation of his due process rights. United States v. Russell, 411 U.S. 423, 431-32 (1973). In Russell, the Supreme Court stated, "we may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction...." Id. Cf. Rochin v. California, 342 U.S. 165 (1962) (conviction reversed on due process grounds where defendant forced to vomit to reveal evidence he had eaten). The government allegedly violated Andrews due process rights under Russell by paying an agent on a contingent fee basis to induce drug sales and by employing an agent who had a reputation as a drug dealer and who had supplied at least one other person with drugs.
 
 
 7
 If the government conduct was sufficiently outrageous, the law does not preclude barring the conviction gained by entrapment, regardless of any predisposition the defendant may have had. See Hampton v. United States, 425 U.S. 484 (1976). In Hampton, the Supreme Court affirmed the conviction of a defendant whom the government had convinced to sell heroin and to whom the government had supplied the heroin to sell. Although Justice Rehnquist's plurality opinion stated that entrapment could not be based on government misconduct in cases where predisposition existed, id., at 488, a majority of the court disagreed. In his concurrence, Justice Powell, joined by Justice Blackman, agreed with the three dissenters that the Russell defense could be available regardless of predisposition if the government conduct was sufficiently outrageous. Id., at 495 (Powell, J. concurring); Id., at 497, (Brennan, J. dissenting). However, Justice Powell cautioned that a defendant would face a stiff standard to bar a conviction because of government misconduct: "the cases, if any, in which proof of predisposition is not dispositive will be rare." Id., at 495 n. 7.
 
 
 8
 This court has developed a framework for determining when a conviction would be barred under Russell. United States v. Brown, 635 F.2d 1207 (6th Cir.1980). Under Brown, the scope of permissible government conduct relates to the type of criminal activity under investigation. Id., at 1213. We must also examine the degree of government involvement: whether the government instigates the criminal activity or merely infiltrates a preexisting enterprise and whether the government directs or controls the activities of the criminal enterprise or merely observes its actions. Id. Another factor is the immediacy of the impact of the government's conduct in inducing the defendant to commit a crime. Id.
 
 
 9
 The government's conduct was not so outrageous as to bar Andrews's conviction. First, use of paid informants is especially necessary to combat drug trafficking. Brown, 635 F.2d at 1213; Hampton, 425 U.S. at 495 (Powell, J. concurring). Because drug sales take place between consenting parties in concealed locations, they are much more difficult to investigate than crimes with more immediate victims, who will complain to the police. Andrews's reliance on Tumey v. Ohio, 273 U.S. 510 (1927), is unfounded because here, unlike in Tumey, there are no allegations that the officers of the court, the judge, the prosecutors, or the police, were paid according to the number of convictions they achieved.
 
 
 10
 Layne's conduct as a government agent does not become outrageous because he had previously used illicit drugs or even trafficked in them. In order to be effective, informants often must engage in some criminal activity or further a criminal enterprise in order to gain the confidence of the subjects of the investigation. Id., at 1212-13.
 
 
 11
 Second, the government was not involved in Andrews's criminal enterprise to an outrageous degree. The government did not control Andrews's activity or, as in Hampton where the conviction was affirmed, supply the drugs to be sold. The government agent merely asked to buy some cocaine. It was Andrews, who acquired the cocaine, who chose the sale price, and who advised that he would be able to sell more cocaine in the future.
 
 
 12
 Finally, the government supplied no great inducement to the defendant to sell the cocaine. The fact that Layne may have used cocaine or other drugs in the past, or even had been a dealer, did not induce the Andrews to make the sale. It merely helped prevent Andrews from suspecting that Layne was a government agent. Allegations as to Andrews's intoxication do not show that the government's conduct was outrageous. Andrews's actions to procure and sell the cocaine and Andrews's several meetings and conversations over a two week period with Layne about selling cocaine show that the court was not in error in deciding that the government did not take advantage of any intoxication by Andrews. Thus, the government's conduct was not so outrageous as to bar Andrews's conviction.
 
 II. Bill of Particulars
 
 13
 Andrews also argues that he was denied a fair trial because the government did not respond fully to his bill of particulars. On October 19, 1988, Andrews moved for a bill of particulars, requesting that the government particularize: (1) the persons alleged to have conspired with the defendant; (2) the occasions upon which the defendant was alleged to have taken acts or steps in furtherance of the alleged conspiracy; and (3) the identity of the person alleged to have aided and abetted the defendant and the manner in which the person did so. The government released the names of the alleged co-conspirators and the person alleged to have aided and abetted. The government refused to state what conduct it would allege, either on the count for conspiracy or the count for aiding and abetting. Instead, the government provided copies of the 12 tape recorded conversations between Layne and Andrews, which it stated were the basis of its case. The trial court refused to compel the government to yield further information.
 
 
 14
 A bill of particulars serves "to inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense...." United States v. Birmley, 529 F.2d 103 (6th Cir.1976). The district court's determination in granting or denying a motion for a bill of particulars can only be overturned if the district court abused its discretion. Here, the indictment specified the charges against Andrews, the date and location of the alleged narcotics sale, and the type and amount of narcotics involved. Further, the government made available the tape recorded conversations which formed the basis of its case. The district court did not abuse its discretion in denying Andrews's motion.
 
 
 15
 Andrews also challenges the indictment, arguing that the indictment, when explained by the bill of particulars, was at variance with the crime for which he was convicted. A variance occurs when the charging terms of the indictment materially differ from the evidence offered at trial. United States v. Bouquett, 820 F.2d 165, 168 (6th Cir.1987). A variance cannot reverse a conviction unless the defendant's ability to defend himself is prejudiced, the trial is unfair, or the indictment is insufficient to bar future prosecutions. Id. The defendant bears the burden to show that any variance was fatal.
 
 
 16
 The bill of particulars stated that the conspiracy included Jeff Shipley and Terry Phillips, but the government does not appear to have introduced evidence from which a jury could find that Shipley was part of the conspiracy. All of the evidence in the record pointed to by the government in its brief merely indicates that Shipley had had cocaine dealings with Andrews in general. There is no tie to the sale to Layne and there is no tie to Phillips. Andrews was convicted of a two person conspiracy on a named three person indictment.
 
 
 17
 However, the government has proved that same conspiracy that it alleged, it simply has not proved that Shipley was part of it. If the same conspiracy is proved, no variance occurs, if one of the members named on the indictment was not shown to be a member of the conspiracy. See United States v. Bowers, 739 F.2d 1050 (6th Cir.1984). Any other result would lead to a complex mess where any time one member of a conspiracy was not convicted, all other members would be granted new trials, regardless of the clarity of their membership in the conspiracy. If the government introduced evidence of members of the conspiracy, that had not been included in the indictment, that situation likely would cause a variance if the defendant were surprised and had no opportunity to prepare a defense. Here, where the evidence introduced is narrower than the allegations in the indictment, the danger of surprise is much less. See United States v. Bowers, 739 F.2d 1050, 1053 (6th Cir.1984) (where the government opted to introduce evidence at trial relating only to the remaining three members of the conspiracy when four had pled guilty, no prejudice to the defendant occurred).
 
 III. Instructions to the Jury
 
 18
 Andrews challenges three instructions given to the jury. First, Andrews contends that under United States v. Enright, 579 F.2d 980 (6th Cir.1978), the district court improperly instructed the jury to consider a co-conspirator's hearsay statements, only if it found that a conspiracy actually existed. Andrews contends that this instruction is too confusing because there were no statements by co-conspirators. However, the government introduced evidence of statements by Terry Phillips, an alleged co-conspirator. In addition, any confusion actually favors Andrews because the jury could consider the admissibility of the statements. Id., at 987.
 
 
 19
 Second, Andrews argues that the district court committed reversible error by refusing to instruct the jury not to draw adverse inferences from the fact that Andrews had a nickname, "Cotton." In the absence of special circumstances, failure to instruct a jury not to draw adverse inferences from the fact that the defendant has a nickname does not violate the Fifth Amendment right to a fair trial.
 
 
 20
 Third, Andrews argues that the district court erred by failing to give a requested curative instruction. Counsel for Andrews stated that she heard the judge instruct the jury during its empaneling for general jury duty, "any mistakes that we make will be cleared up by the Sixth Circuit." The district court denied the request, stating that it had said, "Any mistakes that I make." Without any more evidence that the district court said "we" instead of "I," we will not overturn the district court's characterization of what it said. Thus, each of Andrews's challenges to the jury instructions fails.
 
 IV. Sentencing
 
 21
 Andrews also argues that the district court erred in calculating his sentence under the United States Sentencing Guidelines by improperly including twelve ounces of cocaine. On June 1, 1988, Andrews told Layne that a shipment of 12 ounces of cocaine would be arriving in the area, but that Andrews could only offer Layne three or four ounces because the rest was committed to other buyers. The district court applied Part 2D1.4 of the Sentencing Guidelines to calculate Andrews's offense level based on 12 ounces of cocaine instead of one ounce.
 
 
 22
 The district court erred by including the 12 ounces of cocaine that Andrews discussed with Layne on June 1, 1988. Application Note 6 to section 2D1.1 of the Sentencing Guidelines states, "When there are multiple transactions or multiple drug types, the quantities of drugs are to be added." But Andrews was not convicted for multiple transactions. The indictment accuses Andrews of one drug transaction on May 20, 1988. Andrews's bald statement on June 1, 1988 that 12 ounces of cocaine was coming into the area was not the basis of his conviction. Indeed, there was no evidence of any kind that Andrews's co-conspirators, Phillips and Shipley, were involved at all in this shipment. Andrews's offense level for sentencing should be determined under the offense for which he was convicted, the transaction on May 20, 1988.
 
 
 23
 Andrews also argues that the $50.00 assessment for each conviction under 18 U.S.C. Sec. 3013 is unconstitutional. Andrews contends that section 3013 violated the Origination Clause, Article I, Sec. 7, Cl. 1, of the Constitution because it is a revenue measure that originated in the Senate. In United States v. Ashburn, No. 89-3227 (6th Cir. Sept. 7, 1989), we upheld section 3013 because it is not a revenue provision. Thus, Andrews's contention is without merit.
 
 
 24
 For the above stated reasons, we affirm the district court's conviction of Andrews in a jury trial. However, we vacate the sentence and remand to the district court for resentencing in light of this opinion.